Williams, J.
 

 There is ample evidence to sustain the conviction even if the testimony of Ruth and Hazel Hunt is excluded from consideration.
 

 Counsel for the defendant expressly stated in open court in the final hearing that the only ground of reversal now contended for is that the Court of Common Pleas erred in holding that Ruth Hunt and Hazel Hunt were competent to testify.
 

 Ruth was the first of these young women to be called to the witness stand. Counsel for defendant promptly objected to her testimony and cited to the court, Section 11493, General Code, which reads as follows:
 

 “All persons are competent witnesses except those of unsound mind, and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly.”
 

 
 *384
 
 Later when Hazel was called to the witness stand the same objection was made. In each instance the court overruled the objection and these witnesses testified.
 

 Section 11493, General Code, was under consideration in
 
 Pittsburgh & W. Ry. Co.
 
 v. Thompson, 82 F., 720. The court was then composed of Judges Taft, Lurton and Sage. In rendering the opinion Judge Lurton, at page 727, used this language:
 

 “But it is said that the Ohio statute makes a person of unsound mind absolutely incompetent.”
 

 After quoting Section 5240, Revised Statutes (now Section 11493, General Code, and unchanged in wording), he continued: ,
 

 “But the question remains, who is a person of unsound mind? That the person has been found insane, and is an inmate of an insane asylum, affords
 
 prima facie
 
 evidence that he is of unsound mind, within the meaning of the provision, and operates to throw the burden of proving competency upon the party offering him.
 
 *
 
 * * Whether he was so unsound in mind and memory as to be totally incapable of testifying is as open a question under this statute as at the common law. The statute is but a declaration of the common law. To suppose that it was meant to disqualify every person who is of any degree of unsoundness would bring about an intolerable condition of things, and, under such circumstances, it is not to be presumed that the common law was intended to Be altered or modified to any greater extent than indicated by a reasonable construction of the words of the statute. To say that a person of unsound mind is incapable of testifying is but to state the general rule of the common law. But at the common law the unsoundness must be such as that he is incapable of understanding the nature of an oath or giving a coherent statement touching the matter upon which he is examined.”
 

 
 *385
 
 Since the early days of the common law there has been an evolution in juristic thinking respecting witnesses
 
 non compos mentis.
 
 Professor Wigmore says in 2 Wigmore on Evidence (3 Ech), 583, Section 492:
 

 “There was a period (and it has not so long passed away) when the deranged and the defective, in the superstitious belief of earlier times, which regarded madness as an infliction sent from Heaven, were treated as incapable of being witnesses at all: * * *
 

 “But this indiscriminate rule of exclusion, since the progress in popular understanding of mental derangement and defect, has been modified and rationalized. While it is still attempted to draw a line which prevents certain classes of persons from being listened to at all — a doubtful policy in any case * * #— the law endeavors to make its tests fit the purpose. The question being whether the person is trustworthy as a witness, the law now asks whether
 
 in each case
 
 the derangement or defect is such as to make the person highly
 
 untrustworthy as a witness;
 
 it no longer excludes absolutely: * * *
 

 ‘ ‘ This broad and rational. principle — that the derangement or defect, in order to disqualify, must be such as substantially negatives trustworthiness upon the
 
 specific subject of the testimony
 
 — is now practically everywhere accepted.”
 

 Under the trend of modern decisions the'fact that the witness is insane does not necessarily exclude bim from the witness stand. With the development of science in the treatment of insanity, courts have come to recognize that a person may be insane and at the same time competent to be a witness. For illustration, it is a generally accepted doctrine that a female may lack the mental capacity to consent to a rape and yet have mental capacity to testify. 2 Wigmore on Evidence (3 Ech), 591, Section 498; annotation, 148 A. L. R., 1153, V.
 

 Ordinarily the presumption is that persons who are
 
 *386
 
 called as witnesses are competent (2 Wigmore on Evidence [3 Ed.], 588, Section 497), but this presumption may be overcome by a proper showing. According to the general rule, the question of competency lies in the sound discretion of the trial judge and, if he permits a witness of unsound mind to testify, his action in so doing is not a ground of reversal at the behest of an aggrieved party, unless there is an abuse of discretion.
 
 Holler, Gdn.,
 
 v.
 
 W. S. Dickey Clay Mfg. Co.,
 
 157 Kan., 355, 139 P. (2d), 846, 148 A. L. R., 1131, and annotation at page 1140, III. In
 
 State
 
 v.
 
 Leonard,
 
 60 S. D., 144, 244 N. W., 88, the’ rule is stated thus:
 

 “The broad general principle is that a witness should have sufficient mental capacity to observe, recollect, and communicate, and some sense of moral responsibility; that is, as phrased by Professor Wig-more, some realization of ‘the duty to make the narration correspond to the recollection and knowledge.’ The competency of a mentally immature or deranged witness presents questions very closely related t© those involved with the matter of credibility of a witness. Many recognized authorities upon the law of evidence deem it doubtful policy entirely to exclude any such witnesses. * * * The tendency of the later decisions seems to be more liberal than the earlier cases and to leave the matter to a considerable extent to the discretion of the trial judge.”
 

 The governing principle may be stated briefly but substantially in the following way :
 

 A person who is able to correctly state matters which have come within his perception, with respect to the issues involved, and appreciates and understands the nature and obligation of an oath is a competent witness, notwithstanding some unsoundness of mind. Annotation, 148 A. L. R., 1140. There is authority for the holding that where competency depends upon the existence of any fact which is in dispute the matter of
 
 *387
 
 competency of the witness to testify may become a question for the jury.
 
 Goodson
 
 v.
 
 State,
 
 162 Ga., 178, 132 S. E., 899. The authorities generally take the position that where the court in the exercise of its discretion permits the challenged witness to testify, no issue is presented for the' jury with respect to competency. The jury, however, in passing upon the credibility of such a witness, may cast aside his testimony as unworthy of belief. In 2 Wigmore on Evidence (3 Ed.), 590, Section 497 (c), appears the following text, which is supported by many authorities cited in the notes:
 

 “The preliminary determination of capacity is
 
 for the judge,
 
 not the jury * * *; and it is therefore an improper practice for the judge to leave the testimony provisionally to the jury, to be rejected by them if found ineligible according to legal standard; the jury have nothing to do with preliminary questions of admissibility. But, after the court has passed on the witness’ capacity, it is still open to the jury to conclude that the witness is not credible and to reject the testimony entirely; and the court’s decision does not necessarily affect the estimate which the jury must make. ’ ’
 

 In
 
 State
 
 v.
 
 Scanlan,
 
 58 Mo., 204, 205, the Supreme Court, in speaking of the finding of the trial court concerning.a witness’ competency, used this language:
 

 “No hardship necessarily results; for, if the judge should chance to err in his conclusion, the jury hold a powerful corrective in their right to pass upon the credibility of the witness; as tested on the stand by the usual appliances.”
 

 With respect to the competency of Ruth Hunt, there is important medical testimony given by the physician called by the state. He testified:
 

 “She was able to give a rather good account of what happened to her this fall. But that is not unusual for a
 
 *388
 
 person of this mentality. They are able to correlate the facts of one certain event or two events that occurred to them that have maybe.shocked their mental system. In other words, she is mentally retarded and is not normal mentally. And under a general classification she can be classed as not sane, so she must be classed as insane. ’ ’
 

 When the doctor’s statement is considered in connection with the testimony of Ruth Hunt herself, it is apparent that she showed the ability to understand, recollect and communicate what she saw and heard. With respect to Hazel Hunt, her narration of what transpired considered by itself would indicate that she had like capacity. A great deal is made, however, of the Tatter’s contradictory statements as to whether Ruth Hunt was dressed when she came down stairs. These occurred at the close of her testimony which covered approximately 31 pages of typewritten matter in the bill of exceptions. These contradictory statements which might seriously affect her credibility are by no means conclusive of want of competency. One of her mentality could well become confused after a long and gruelling cross-examination by an able advocate.
 

 Ruth Hunt testified that swearing to tell the truth meant help to God, and Hazel testified that swearing to tell the truth meant helping God. It is true there were some statements by them indicating either that their understanding of the nature of an oath was not of the best or that they could not express their thoughts very well. However, the trial judge saw these witnesses and heard them testify; and there was evidence from which he could infer that they regarded telling the truth on the witness stand as serving Providence and doing right, and that they had sufficient understanding of the nature and obligation of an oath to warrant their testifying.
 

 
 *389
 
 This court is not justified in finding that the trial judge abused his discretion. On the whole the defendant had a fair trial, and the record discloses no ground upon which this court may lawfully base a judgment of reversal.
 

 For the reasons given, the judgment of the Court of Appeals is hereby affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Zimmerman, Turner and Matthias, JJ., concur.
 

 Bell, J., concurs in the syllabus but dissents from the judgment.