This appeal arises out of jury verdicts finding Appellant guilty of theft and intimidation of a witness. Appellant claims that a critical prosecution witness should not have been able to testify against her due to incompetency. For the following reasons, this Court affirms the lower court judgment.
On October 19, 1995, a complaint issued charging Appellant with the theft of $18,850.00 in cash and twenty-five quilts from Carol Galavich in violation of R.C. 2913.02 (A) (1), a felony of the third degree. On November 3, 1995, a preliminary hearing was held with Appellant represented by counsel. The trial court found sufficient evidence to bind Appellant over to the Belmont County Grand Jury. On December 7, 1995, the Grand Jury indicted Appellant not only on the theft count but also on intimidation of witness Geneva Briggs in violation of R. C.2921.04 (B), a felony of the third degree.
The December 18, 1995 docket entry indicated that Appellant entered a plea of not guilty at arraignment and was appointed counsel to represent her. On January 11, 1996, a bill of particulars was filed providing detail as to the alleged charges against Appellant.
In January of 1995, Carol Galavich hired Appellant to reside with and care for her ill mother Marie Kriechbaum, in Marie Kriechbaum's residence. Upon Ms. Kriechbaum's death, Mrs. Galavich allowed Appellant to stay at her mother's home and bring in and care for other elderly individuals. However, Appellant suddenly decided to move in October of 1995. Upon Appellant's departure, Mrs. Galavich discovered that over $18,000.00 and twenty-five homemade quilts were missing from her mother's home.
Geneva Briggs, the prosecution's critical witness, testified against Appellant at trial, recalling that she first met Appellant in 1987 and had become reacquainted with her while Appellant was residing at Marie Kriechbaum's home. (Tr. of Proceedings, 2/27/96, pg. 125). Briggs related that she drove with-Appellant to the Kriechbaum home to help Appellant move when Mrs. Galavich's husband John confronted Appellant about the missing money and quilts. (Tr. of Proceedings, 2/27/96, pg. 128). Although Briggs could not hear the conversation between Mr. Galavich and Appellant, Appellant later related to Briggs the contents of the conversation.
Briggs stated that after this confrontation, she and Appellant drove to the Galavich house. (Tr. of Proceedings, 2/27/96, pg. 129). Briggs testified that upon arriving at the Galavich home, Appellant handed her a large roll of cash to hold and told her to hide the money from Mr. Galavich, who had now arrived home, while Appellant went into the house to discuss the theft allegations with Mrs. Galavich. (Tr. of Proceedings, 2/27/96, pg. 113-115). Briggs testified that she counted the money and discovered that there was over $16,000.00 in cash. (Tr. of Proceedings, 2/27/96, pg. 115).
After Appellant returned to the car and they drove away, Briggs testified that Appellant demanded the money be returned to her and she put it in her "fanny pack." (Tr. of Proceedings, 2/27/96, pg. 118). When Briggs questioned Appellant about where she got the money, Appellant told her that she had saved it. (Tr. of Proceedings, 2/27/96, pg. 119). Briggs testified that she did not immediately inform the police that Appellant had a large amount of cash on hand until Briggs noticed money missing from her own home. Appellant had been staying with Briggs. (Tr. of Proceedings, 2/27/96, pg. 121).
On October 17, 1995, execution of a search warrant found over $2,000.00 in Appellant's "fanny pack." Briggs testified that after Appellant was arrested and jailed, she received a telephone call from Appellant which began with polite conversation. This call turned threatening when Appellant began telling Briggs what would happen to her if she testified against her and indicated how many ways someone could die. (Tr. of Proceedings, 2/27/96, pg. 124). Briggs also testified that she was afraid of Appellant's son and that she took Appellant's threats seriously and feared for her life. (Tr. of Proceedings, 2/27/96, pgs. 124-125).
On direct examination, Briggs testified that she was not employed and was receiving social security disability. (Tr. of Proceedings, 2/27/96, pg. 106, 120). Briggs stated that she had been out of the hospital about three months when she first met Appellant at church in 1987. (Tr. of Proceedings, 2/27/96, pg. 108). On cross examination, Briggs explained that she was in the hospital and was receiving social security disability because she tried to commit suicide in 1987 by shooting herself in the head with a gun. (Tr. of Proceedings, 2/27/96, pg. 136). Briggs also related that she underwent surgery as a result of the self-inflicted wounds and spent thirty-four days in a mental health facility immediately thereafter. (Tr. of Proceedings, 2/27/96, pg. 137). Defense counsel also cross-examined Briggs regarding allegations that she was delusional, asking her about statements she made to her pastor and other church members that her husband had died and that she needed to make burial arrangements. (Tr. of Proceedings, 2/27/96, pgs. 138-139). Briggs denied making these statements and testified that her ex-husband was indeed alive. (Tr. of Proceedings, 2/27/96, pg. 139). Defense counsel also questioned Briggs about her criminal history, revealing that she spent time in jail on three occasions; for driving a vehicle without a license, passing bad checks and stealing a food package meant for Appellant. (Tr. of Proceedings, 2/27/96, pgs. 139-146). Briggs admitted all of these incidents. (Tr. of Proceedings, 2/27/96, pgs. 139-146).
On redirect examination, Briggs again discussed her suicide attempt and the time spent in a mental health facility. (Tr. of Proceedings, 2/27/96, pg. 149). Briggs testified that she saw two psychiatrists immediately following the attempt in 1987 and related that she had no problems since that time and had not required psychiatric services since. (Tr. of Proceedings, 2/27/96, pgs. 150-152).
Chief of Police Manifred Keylor testified that he helped execute the search warrant of Appellant's vehicle and person on October 17, 1995 which resulted in the discovery of $2,796.95 in Appellant's "fanny pack". He testified that the search warrant was based upon the testimony of Geneva Briggs. (Tr. of Proceedings, 2/27/96, p. 175-178). Chief Keylor also testified that he had known Briggs at least thirty years and was aware of her personal problems. (Tr. of Proceedings, 2/27/96, pg. 178-179). Chief Keylor stated that he relied solely on Briggs' testimony to obtain the search warrant, that he had no problem believing her testimony and had no reason to think that she lied to him. (Tr. of Proceedings, 2/27/96, pg. 179).
Defense counsel also called Briggs' daughter Kim Schilling to the stand to testify regarding her mother. Schilling testified that her mother did spend time in a mental health facility in 1987 after attempting suicide. (Tr. of Proceedings, 2/27/96, pg. 193). Schilling also testified that she was not aware of a probate court order issued in 1987 adjudicating Briggs mentally ill. (Tr. of Proceedings, 2/27/96, pgs. 196-197). However, Schilling did admit that she signed an affidavit that was attached to that order where she agreed upon advice of doctors that her mother represented a substantial and grave risk of harm to herself at that time. (Tr. of Proceedings, 2/27/96, pgs. 196-197).
Schilling further testified that to her knowledge, her mother was not diagnosed with a mental illness at that time but stated that the doctors talked to her father in her absence. (Tr. of Proceedings, 2/27/96/, pg. 197). Schilling testified that she had no knowledge whether Briggs or any other family member petitioned probate court to restore her mother's competency. (Tr. of Proceedings, 2/27/96, pg. 197). Schilling further stated that she had not spoken to her mother in three years because of the group of people that her mother was associating with and testified that she did not know her mother's current competency level as a result. (Tr. of Proceedings, 2/27/96, pg. 198).
Appellant testified as to the charges against her and testified that she believed Briggs' was incompetent. (Tr. of Proceedings, 2/27/96, pgs. 234, 236, 245-246, 253-254).
At the close of Appellant's case, defense counsel indicated that "we would renew our motion to strike the testimony of Geneva Briggs as being incompetent to testify." (Tr. of Proceedings, 2/27/96, pg. 257). The trial court overruled the motion, finding that Briggs' previous mental difficulties almost ten years ago did not affect her ability to testify at trial and finding that her testimony revealed the contrary. (Tr. of Proceedings, 2/28/96, pg. 257). In closing arguments, Briggs' previous mental health problems were again brought to the attention of the jury. (Tr. of Proceedings, 2/28/96, pgs. 260-262, 272-273). On February 28, 1996, the jury found Appellant guilty of theft and intimidation of witness Geneva Briggs. On March 7, 1996, the trial court sentenced Appellant to two years on the theft count and two years on intimidation of a witness, said sentences to run consecutively. The trial court subsequently overruled Appellant's motions for shock probation and vacation or reduction of her sentence.
On March 14, 1996, Appellant filed this appeal raising the following two assignments of error:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO RECORD THE COMPETENCY HEARING OF A CRITICAL PROSECUTION WITNESS, THEREBY DENYING TO DEFENDANT-APPELLANT WANDA DILLON HER CONSTITUTIONAL RIGHT TO A FAIR TRIAL. Transcript 106-152; 257-258
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO CONDUCT AN IN CAMERA INTERVIEW OF A WITNESS WHO HAD PREVIOUSLY BEEN DETERMINED TO BE INCOMPETENT PRIOR TO THE WITNESS TESTIFYING. Transcript 106-152; 257-258"
It should be noted that Appellee has failed to file a brief in this matter. Consequently, under App. R. 18 (C), this Court can accept Appellant's statement of the facts and issues as correct and reverse the judgment if Appellant's brief reasonably sustains such an action.
Appellant's two assignments of error appear, on their face, to be alternative. Either a hearing was not held or the court held a hearing but erred by failing to record it. A closer look at these arguments reveals that Appellant is really arguing in both that Briggs' testimony should have been excluded. Since both assignments of error contain a common basis in law and fact, we will address them together. However, this Court finds the competency issue difficult to review not only because of the appellate standard of review that we must employ, but also because a transcript of any competency hearing held by the trial court prior to trial is lacking. In fact, we cannot discern from the record whether the trial court even conducted such a hearing. In her brief, Appellant contends on the one hand that the trial court erred under Crim.R. 22 by failing to record Ms. Briggs' competency hearing. She asserts, on the other hand, that the trial court erred in failing to conduct an in-camera interview before allowing Briggs to testify. Further complicating matters is the fact that Appellee filed no brief confirming or denying that the trial court held a competency hearing. There are no other indications in the record of the existence of such a hearing, including the docket.
Even assuming that Appellant has a valid claim of error in the first of her alternative arguments, Appellant's assignments of error are without merit as she has shown no prejudice to her case resulting from the trial court allowing Briggs to testify at trial.
Evid.R. 601(A) provides that "Every person is competent to be a witness except:
"(A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly * * *. " Appellant argues in her second assignment of error that because Ms. Briggs was declared incompetent in a prior judicial proceeding, she should have been declared incompetent to testify at Appellant's trial. We disagree.
The Ohio Supreme Court has held that showing a witness to be of unsound mind in some areas does not automatically render that witness incompetent to testify. A person who can correctly state matters within his or her perception on the issues involved and who understands the nature and obligation of an oath is a competent witness notwithstanding that he or she may not be completely sound. State v. Bradley (1989), 42 Ohio St.3d 136,141, quoting State v. Wildman, (1945), 145 Ohio St. 379, at paragraph two of the syllabus.
The Court has also held that "[t] he competency of an insane person to testify as a witness lies in the discretion of the trial judge and a reviewing court will not disturb the ruling thereon where there is no abuse of discretion." Id.
We find no abuse of discretion in allowing Briggs to testify. If the trial court held a competency hearing, which it was not required to do, it is still Appellant's duty to provide this Court with some record of proceedings to review. See App. R. 9. Absent a transcript of hearing or other App. R. 9(C) or (D) alternative submitted by Appellant when a transcript is unavailable, this Court assumes the regularity of lower court proceedings. Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197,199-200. If, indeed, a competency hearing was held, we must assume that the trial court proceeded with regularity in interviewing Briggs and satisfying itself that she was competent to testify at trial. A prior adjudication almost ten years ago does not necessarily render a witness incompetent to testify as a witness at a trial ten years later.
Further, Briggs' testimony reveals no indications of incompetency. In fact, her testimony demonstrates that she was clearly able to receive, recall and relate the events at issue, including her own mental history. Her testimony also reveals that she understood and appreciated the difference between lying and telling the truth when defense counsel questioned her about allegations that she fabricated stories about her ex-husband. (Tr. of Proceedings, 2/27/96, pgs. 138-139).
In her alternative scenarios, Appellant asserts that a competency hearing was held-but that the trial court deferred ruling on Ms. Briggs' competency until after she testified. This we would not condone. A trial court must make a preliminary decision on competency before allowing a witness to testify. See State v. Johnson (1986), 38 Ohio App.3d 152. However, in State v. Morgan, the court found that although the better procedure is for a trial court to conduct a preliminary voir dire examination of a witness, the failure to do so was not prejudicial error when the record contained "* * * indicia of the witness' ability to receive just impressions of facts, to relate facts truthfully, and to understand the consequences of telling falsehoods * * * ." (1986), 31 Ohio App.3d 152, 157. The Morgan court found that each case must be decided on its own facts when such circumstances occur. Id. Even with a preliminary determination, a trial court continues to evaluate the witness' competency based upon the witness' actual testimony at trial. State v. McMillan (1989), 62 Ohio App.3d 565,566, citing Kentucky v. Stincer (1987), 482 U.S. 730.
Again, without a transcript of the alleged competency hearing or a suitable App. R. 9(C) or (D) alternative, we cannot discern if the trial court preliminarily determined competency or deferred ruling on the issue and must assume regularity in the lower court's proceedings. The trial transcript appears to support that the lower court acted correctly by overruling Appellant's motion to strike Briggs' testimony at some time before trial. Again, the record does not support Appellant's statement that a hearing was held. The record does support that Appellant made a pretrial motion to exclude Briggs' as a witness. The trial transcript reveals that Appellant's counsel failed to object to Briggs' testimony before she testified and renewed a motion to strike Briggs' testimony only after her daughter testified. (Tr. of Proceedings, 2/27/96, pg. 257). However, no previous oral motion to strike appears in the trial transcript. No written motion exists at all. Thus, we may only assume that any previous motion to strike occurred before trial.
Alternatively, Appellant asserts in her first assignment of error that the trial court committed prejudicial error in failing to record the competency hearing of Briggs as required under Crim.R. 22. Appellant is correct that the trial court should have indeed recorded any pretrial witness competency hearing pursuant to Crim.R. 22 if one was held. State v. Said
(1995), 71 Ohio St.3d 473. However, Appellant's counsel also has a duty to take steps to ensure that a record was made of the hearing or at least to object to the lack of a recording. Appellant's counsel should also look to establish a record by filing a written motion regarding the alleged incompetency of Briggs to testify. Lastly, this Court mandates that Appellant at least file a suitable alternative to a transcript of a preliminary hearing as required under App. R. 9 when an actual transcript is unavailable.
Although the Ohio Supreme Court in Said found that a trial court's failure to record a competency hearing was reversible error, supra at 475, we find that case distinguishable because the competency hearing in that case was mandatory. A predetermination of competency was necessary in Said because the minor witness-victim in Said did not appear at trial and was therefore not subject to cross examination. We have earlier stated that, in the instant case, a ten year old suicide attempt and subsequent commitment to a mental health facility for thirty-four days does not necessarily demand a competency hearing for this witness at a trial occurring almost ten years later.
Further, Briggs was present at trial, testified in full as to the competency issue and was subject to full cross-examination. The trial transcript reveals that Briggs discussed her previous mental difficulties and suicide attempt on cross-examination in front of the jury on more than one occasion. Briggs' daughter also testified to her mother's mental health and subsequent committal after a suicide attempt. Closing arguments also emphasized Ms. Briggs' previous mental state. Consequently, even assuming arguendo that the trial court erred to either of the arguments asserted by Appellant, Appellant has failed to show that she was prejudiced by the trial court allowing Briggs to testify. Briggs' mental health issues were presented to the jury and the jurors determined the weight and credence to give to Briggs' testimony.
For all of the foregoing reasons, we find that the assignments of error advanced by Appellant are without merit. Accordingly, the trial court judgment is hereby affirmed.
Donofrio, P. J., concurs.
Vukovich, J., concurs.
APPROVED:
 ------------------------ CHERYL L. WAITE, JUDGE