O P I N I O N
Defendant-appellant Larry Tanner appeals the March 9, 1998 Judgment Entry of the Richland County Court of Common Pleas, which memorialized a jury verdict of guilty, and sentenced appellant accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
Appellant was charged with one count of rape, in violation of R.C. 2907.02(A)(2) and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(1). At the arraignment, appellant entered pleas of not guilty to each charge. The original jury trial, which started November 10, 1997, ended in a mistrial. The second jury trial commenced March 5, 1998. Appellant was convicted on both counts. At trial, the following facts were elicited. On August 8, 1997, Vicky Partlow was relaxing in her new apartment. She had spent the day moving her belongings from the domestic violence shelter, her previous residence, to Constance Hunter's apartment. Ms. Partlow met Ms. Hunter just a few weeks earlier at the domestic violence shelter. Ms. Hunter had just asked her boyfriend, appellant herein, to move out of the residence and was looking for a roommate. At the time, Ms. Hunter was pregnant with appellant's child. Ms. Partlow first met appellant when she went to look at the apartment, about one week before she moved in. Although Ms. Partlow provided conflicting testimony, there is some evidence appellant and Ms. Partlow had a conversation at this time in which appellant warned Ms. Partlow not to come between appellant and his family. Ms. Partlow also met Joe Murphy and Nancy Wilson, two next door neighbors. Ms. Partlow and Ms. Hunter started the move to her new apartment on the morning of August 8, 1997. When the two arrived at the apartment to drop off the first load of her belongings, appellant and Lisa Sharrock were there. Ms. Sharrock asked Ms. Hunter to babysit that night, and welcomed Ms. Partlow to babysit as well. Ms. Partlow declined, preferring to stay and unpack her belongings. When Ms. Partlow and Ms. Hunter returned with another load of belongings later in the day, they found appellant in the apartment again. Ms. Hunter asked Ms. Partlow to "bag up" any of appellant's belongings remaining in the apartment and to set them in the hallway for appellant to pick up. Ms. Hunter asked Ms. Partlow not to allow appellant into the apartment. Later that evening, after Ms. Sharrock picked up Ms. Hunter to babysit, Ms. Partlow sat down to watch a movie and relax. It was at that point appellant knocked at the door. Ms. Partlow answered the door, but testified she left the chain on. Appellant asked Ms. Partlow why his belongings were in the hall. She informed appellant Ms. Hunter preferred he not come in the apartment. Appellant pleaded with Ms. Partlow to open the door, telling her he wanted to talk about Ms. Hunter and the pregnancy. Ms. Partlow opened the door and the two sat down. Appellant moved closer to Ms. Partlow and began fondling her. Ms Partlow asked appellant to leave, but he continued. Ms. Partlow testified she was extremely uncomfortable and asked appellant to stop and to leave her alone. She testified she tried to push him away but her efforts were of no effect. Appellant ultimately raped Ms. Partlow. Appellant testified she continually asked him to stop, and started to scream. Appellant threatened to make it worse for her if she continued screaming. Ms. Partlow testified that after fifteen minutes, appellant removed himself and told her to leave. Appellant explained it was his apartment, and his family and she didn't belong there. After she dressed, Ms. Partlow left the apartment, went down the hallway, down the steps and across the street to a convenience store where she phoned a friend at the domestic violence shelter for help. As she went through the hallway, she passed James Murphy, her next door neighbor. Mr. Murphy testified he had a mental handicap which causes seizures and for which he attends special education classes because he needs some "help with things." (T. at 149). Mr. Murphy was with his girlfriend, Nancy Wilson, that evening. Ms. Wilson, also a tenant in the building, lived across the hall and on the same floor as Ms. Partlow. Mr. Murphy testified he saw appellant walk down the hallway and knock on Ms. Partlow's door. Mr. Murphy "made it a habit" to sit in the hallway and check who was coming in and going out. (T. at 153 ). Mr. Murphy testified he saw the boxes of appellant's belongings in the hallway. Mr. Murphy saw Ms. Partlow open the door slightly just before appellant forced the door open. Mr. Murphy testified he heard Ms. Partlow screaming and also heard her say "Leave me alone, Larry" three or four times. (T. at 157). Mr. Murphy was too afraid to do anything, so he did not try and enter Ms. Partlow's apartment. Mr. Murphy watched Ms. Partlow run out of the apartment and down the steps. He stated she was crying. Appellant came into the hallway and asked Mr. Murphy what his business was in the hallway. Mr. Murphy did not respond. Ms. Wilson was with Mr. Murphy during this time. She explained she was "a slow learner," and had a mental handicap. (T. at 126-127). Ms. Wilson testified she knew Ms. Partlow had just moved in with Ms. Hunter and that appellant had moved out. While she did not see appellant enter Ms. Partlow's apartment, Ms. Wilson testified she heard a "scary" scream come out of Ms. Partlow's apartment. She walked out to the hallway, and asked Mr. Murphy if he heard the scream. She said the scream was a man's voice, but that she also heard a woman scream "stop." She could not identify either voice. She testified Mr. Murphy wanted to go and investigate, but she told him not to get involved. She did not call the police because she was afraid of appellant. Ms. Wilson testified she saw Ms. Partlow leave the apartment "upset and crying." The state also presented the testimony of Joseph Nixon. Ms. Wilson lives with Mr. Nixon and his wife. Mr. Nixon testified when he left his apartment to go to work at the convenience mart across the street, he saw a box of appellant's clothes in the hallway. Just before he left for work, he saw appellant come into the hallway and knock on Ms. Partlow's door. He saw Ms. Partlow partially open the door and heard her tell appellant he could not come in. Mr. Nixon watched appellant squeeze himself into the apartment. Mr. Nixon then went to work. The next time Mr. Nixon saw Ms. Partlow, she had just entered the convenience mart to use the phone. Mr. Nixon testified Ms. Partlow was nervous, shaken and crying; she was wiping her eyes. After she finished her phone call, Ms. Partlow waited outside the convenience mart until a cab picked her up. On March 6, 1998, the jury found appellant guilty of one count of rape in violation of 2907.02(A)(2) and one count of gross sexual imposition in violation of R.C. 2905.05(A)(1). In a March 9, 1998 Judgment Entry which memorialized the jury's decision, the trial court sentenced appellant to ten years in prison on the rape charge and eighteen months on the gross sexual imposition charge. The sentences were to be served concurrently. It is from that judgment entry appellant prosecutes this appeal assigning the following as error:
I. THE TRIAL COURT COMMITTED PLAIN ERROR IN ALLOWING STATE'S WITNESSES TO TESTIFY WHEN THEIR COMPETENCE WAS CALLED INTO QUESTION PRIOR TO THEIR TESTIMONY.
II. DEFENDANT-APPELLANT WAS DENIED A FAIR AND IMPARTIAL HEARING DUE TO THE MISCONDUCT OF THE PROSECUTOR.
III. THE TRIAL COURT ERRED BY NOT ALLOWING DEFENDANT-APPELLANT TO HAVE WITNESS DAVID ADKINS TESTIFY AS TO PROSECUTION'S WITNESS, JAMES BLACK'S POSSIBLE BIAS, PREJUDICE OR MOTIVE TO MISREPRESENT PURSUANT TO EVIDENCE RULE 616.
IV. DEFENDANT-APPELLANT'S CONVICTION SHOULD BE REVERSED AND HE SHOULD BE GRANTED A NEW TRIAL, AS HE DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL.
 I
In his first assignment of error, appellant argues the trial court erred in allowing Ms. Wilson and Mr. Murphy to testify when their competence had been called into question prior to their testimony. Appellant claims because each of these witnesses had a mental disability, the judge should have, sua sponte, held a hearing to determine their competency before permitting their testimony. We do not agree. Evid. R. 601(A) provides everyone is competent to be a witness except those of unsound mind and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions on which they are examined or of relating them truthfully. Even if a witness is found to be of unsound mind, the witness is not automatically incompetent to testify. State v. Bradly (1989), 42 Ohio St.3d 136,140. "A person who is able to correctly state matters which have come within his perception with respect to the issues involved and appreciates and understands the nature and obligation of an oath, is a competent witness notwithstanding some unsoundness of mind." State v. Wildman (1945), 145 Ohio St. 379
at p. 3 of the syllabus. The proponent of the witness's testimony bears the burden of proving the witness capable of receiving just impressions and relating them truthfully. Clark, supra at 470. Any determination as to the competency of a witness is to be made by the trial judge. State v. Clark (1994), 71 Ohio St.3d 466. A trial judge, who sees and hears the testimony of a witness and passes on their competency, is in a far better position to judge competency than is this Court, which only reads their testimony from the record. Bradly, supra at 470. Absent an abuse of discretion, the trial judge's determination will not be disturbed on appeal. Id. at 469. The term abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. State v. Moreland (1990), 50 Ohio St.3d 58, 61. In the case sub judice, appellant failed to object to the competency of the witnesses. Therefore any alleged error must be examined under a plain error standard. Crim. R. 52(B) provides:
(B) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.
Notice of plain error under this rule is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See: State v. Long (1978), 53 Ohio St.2d 91; State v. Cooperrider (1983), 4 Ohio St.3d 226. Appellant fails to suggest exactly how the outcome of the case would have been different or how permitting Mr. Murphy and Ms. Wilson to testify created a manifest miscarriage of justice. Joseph Nixon, a next neighbor of the victim and a roommate of Ms. Wilson, testified he saw appellant force his way into the victim's apartment. Mr. Nixon also testified he saw the victim upset and crying at the convenience store when she was calling for a ride. Mr. Murphy and Ms. Wilson were the only witnesses other than the victim, Ms. Partlow, to testify hearing Ms. Partlow scream and tell appellant to "stop." In reviewing their testimony it appears they were able to correctly state matters within their perception and they appreciated and understood the nature and obligation of their oath. We find the trial court would not have abused its discretion it allowing their testimony even had an objection been made. Moreover, in light of all the evidence presented at trial, most notably the victim's testimony, we find no manifest miscarriage of justice occurred even if the testimony of Ms. Wilson and Mr. Murphy was improperly admitted.
 II
In his second assignment of error, appellant asserts he was denied a fair and impartial trial due to the misconduct of the prosecutor. Specifically, appellant attacks four statements made by the prosecutor during closing arguments. The test for prosecutorial misconduct during closing argument is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1990), 51 Ohio St.3d 160. It is the duty of the reviewing court to consider the complaint of conduct in the context of the entire trial. Dards v. Wainwright (1986), 477 U.S. 168. If there is no objection to the statement at trial, the appellant has waived all but plain error. State v. Stojetz (1999), 84 Ohio St.3d 452, 456. The first challenged statement was with regard to the testimony of James Black. Mr. Black was incarcerated in the same facility as appellant. Mr. Black agreed to testify for the prosecution regarding statements appellant made about this incident. In exchange, Mr. Black was offered a plea agreement in his own case. In closing, the prosecutor stated: Now, you heard about James Black's record. There is no question the guy's a criminal. There is no question he's a thief. But, ladies and gentlemen, it takes criminals to get criminals. There is no question he has done it before. He told you he testified in another case. (T. at 425).
* * * Appellant's counsel did not object to this statement at trial. Accordingly, we review this statement under the plain error standard. We find the prosecutor's statement with regard to Mr. Black improper because the statement ". . . it takes criminals to get criminals" implies the prosecutor's personal opinion as to appellant's guilt. However, in light of all the evidence presented, we do not find this statement created a manifest miscarriage of justice so as to require reversal. Appellant did object to the second challenged statement, in which the prosecutor urged the jury to "close their mind[s]":
Ladies and gentlemen, the defense attorney asks you to keep an open mind. And that is something that I agree with him. And throughout the evidence you need to listen to everyone's testimony before you make a determination. And that's what I tried to instill upon you during voir dire.
You had witnesses who testified here with mental disabilities, and I asked you to please listen to their testimony before you judge it, and — as you should do with every case. But this is the time that you should close your mind. This is the time that accusation turns into more. The accusation — Counsel for appellant objected, and the trial court issued a curative instruction to the jury:
THE COURT: Folks, this is closing argument. Understand that what the attorneys are saying now is not the evidence and it's not the law of the case. It's their opportunity to argue to you the results they think you should reach. They're not going to agree on that, you won't be surprised to learn, I'm sure, as to what result they think you should reach. But understand, this is argument.
To the extent that someone's telling you to close your mind, you'll need to listen to all the arguments and all the evidence before you decide this case, how to resolve this case. (T. at 430-432).
* * *
Though we find the prosecutor's statement improper, we do not find it prejudicially affected appellant's substantial rights. Further, when viewing the statement in light of the entire trial and the evidence presented, we find the trial court's curative instruction removed any taint caused by the improper remark. In the third challenged statement, appellant takes issue with the prosecutor's characterization of appellant's case as "smoke and mirrors" :
You decide who's trying to mislead you. You decide where — it's smoke and mirrors. Trying to get your focus off the facts in this case and on to something else here.
* * *
Smoke and mirrors. Keep your focus on the facts of this case, and don't let this extraneous stuff that's pointed out to you to get you off of it.
Appellant did not object to either statement. We do not find these statements improper. Finally, appellant objected to the following statement:
[PROSECUTOR]: Well, ladies and gentlemen, that's because she's friends with Constance. Constance was in the shelter. Perhaps the Defendant was the cause of some of the reasons she's in the shelter —
MR. HITCHMAN: Objection, Your Honor.
THE COURT: This is argument, again, so just take it for what it's worth. It's argument. T. at 449-450.
Although the trial court attempted to issue a curative instruction, we find the court's statement did not remove the prejudice of the statement. The prosecutor was essentially speculating as to the evidence of other bad acts by appellant for which their was no evidentiary basis. This highly improper. However, in light of all of the other evidence, and the due to the isolated nature of this statement, we do not find the statement affected the substantial rights of appellant. Appellant's second assignment of error is overruled.
 III
In his third assignment of error, appellant maintains the court erred by not permitting appellant to call David Adkins as a rebuttal witness to Mr. Black. At trial, Mr. Black testified appellant told him appellant had intercourse with Ms. Partlow despite her refusal. This conversation took place in jail. On cross examination, counsel for appellant asked Mr. Black if he ever made a statement to a Mr. David Adkins "that you'd sell your own mother down the river to avoid going back to prison." (T. at 347). Mr. Black answered "No, sir." Id. Thereafter, appellant attempted to make the following proffer on the record with regard to the testimony of Mr. Adkins:
MR. HITCHMAN: On the issue of calling David Adkins. I would ask the Court to allow me to do that under Evidence Rule 16, which basically says, bias, prejudices, interest or any motive to misrepresent may be shown to impeach the witness, either by examination of the witness or by extrinsic evidence. I believe that rule allows me to attack or discredit James Black because he has an interest in saying I wouldn't send my mother down the river because he wants to try and get a shorter sentence.
THE COURT: Uh-huh. I'm confused about which rule you're talking about, the extrinsic evidence of that.
MR. HITCHMAN: Evidence Rule 16, bias prejudice or interest or any motive.
MS. ROTELL: And I would — my argument would be it's hearsay and there's no exception to it. He has not pointed out an exception to the hearsay.
THE COURT: Extrinsic evidence is not the same thing as hearsay. Extrinsic evidence is evidence which is an exception, but it can be evidence outside the Defendant's own admissions, as far as his bias in there. You've already shown that agreement that he got a lesser sentence, that's been brought out. For you to say that despite that coming in, he told me he would sell his mother down the road for whatever reasons —
MR. HITCHMAN: Okay.
THE COURT: You've got your record.
(Emphasis added).
Evid. R. 103 provides, in part: (A) Effect of erroneous ruling
Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
* * * (2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. Offer of proof is not necessary if evidence is excluded during cross examination.
* * *
Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court. Because the substance of the evidence was apparent from the context within which the questions were asked, and because the trial court indicated it understood the substance of the testimony Mr. Adkins would give, a formal proffer of evidence was not required. While we believe the trial court erred in not allowing the testimony of Mr. Adkins, we also find the exclusion of the Mr. Adkins' testimony did not affect a substantial right of appellant. Defense counsel succeeded in impeaching Mr. Black's credibility and veracity by pointing out the numerous names and social security numbers Mr. Black had used and Mr. Black's prior convictions. Further, defense counsel demonstrated Mr. Black's self-interest when questioning him about the details of his plea agreement with the state. Mr. Black also admitted he testified in a separate case, in exchange for another plea bargain on different charges. In light of the extensive evidence elicited in cross-examination impeaching Mr. Black's credibility, any error on the part of the trial court in excluding the testimony of Mr. Adkins did not affect a substantial right of appellant. Appellant's third assignment of error is overruled.
 IV
In his fourth assignment of error, appellant asserts he received ineffective assistance of trial counsel. Specifically, appellant argues his trial counsel failed to file any motion or to otherwise question the mental capacity of Mr. Murphy and of Ms. Wilson. We do not agree. A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 113 S.Ct. 838,122 L.Ed.2d 180; Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley,42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id. In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545, 558, citing Lockhart v. Fretwell, supra. The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." State v. Bradley, supra at 143, quoting Strickland v. Washington, supra, at 697. Accordingly, we will direct our attention to the second prong of the Strickland test. Upon our review of the transcript, we find the testimony of Mr. Murphy and of Ms. Wilson, although arguably containing inconsistencies, established both witnesses were capable of presenting testimony of the events they perceived. Even had appellant's counsel objected on the basis of competency, as noted in our discussion of appellant's first assignment of error, supra, the trial court would not have abused its discretion in overruling the same. Additionally, because Mr. Murphy's and Ms. Wilson's testimony was corroborative to that of Mr. Nixon and Ms. Partlow, appellant has failed to demonstrate how the result of the trial was unreliable or how the trial was fundamentally unfair. Appellant's fourth assignment of error is overruled.
By: Hoffman, J. Wise, P.J. and Farmer, J.