OPINION
{¶ 1} Richard Hardie is appealing the judgment of the Montgomery County Common Pleas Court, which found him guilty of gross sexual imposition.
 {¶ 2} Richard Hardie married in 1986 and he and his wife had two daughters. The couple divorced in 1994 only to remarry in 1998.[1] During the period from May 1, 2002, to October 16, 2002, Richard Hardie engaged in sexual conduct and sexual contact with his fifteen-year-old developmentally handicapped daughter, H. As a result of her disability, H. did not behave as a normal fifteen-year-old girl. H. held hands when crossing the street, sat in people's laps, carried stuffed animals, and wore "cartoontype" outfits. Eventually, H. told her teacher, Carrie Kihn, that Hardie was behaving inappropriately. H. stated that Hardie had touched her "private part" with his finger and mouth while H.'s mother was out of the house. Further, H. stated that Hardie had touched her breast with his hands.
 {¶ 3} H.'s teacher reported the abuse to children's services and the child was referred to the Care Clinic at Children's Medical Center, where she was examined by Dr. Ralph Hicks. Although Dr. Hicks did not find any abnormal physical results from his exam, he stated that this did not rule out sexual abuse.
 {¶ 4} On January 8, 2003, Hardie was indicted by the grand jury on two counts of rape in violation of R.C. 2907.02(A)(1)(c) and two counts of gross sexual imposition in violation of R.C. 2907.05(A)(5). A hearing was requested and held on the issue of H.'s competency to testify. The trial court found H. competent to testify.
 {¶ 5} A jury trial commenced on May 21, 2003. During the trial, one of the rape counts was nolled. On May 22, 2003, the jury returned a verdict, finding Hardie not guilty of rape and guilty of one count of gross sexual imposition. On the remaining count of gross sexual imposition, the jury was not able to reach a verdict and the court declared a mistrial as to that charge. Subsequently, the trial court sentenced Hardie to an eighteen-month prison sentence on his conviction for the one count of gross sexual imposition. Hardie has filed this appeal from his conviction, raising the following assignments of error.
 {¶ 6} "[1.] Whether the trial court erred in ruling [H.] was competent to testify.
 {¶ 7} "[2.] Whether the trial court erred in failing to sustain appellant's objection to rebuttal testimony by the state.
 {¶ 8} "[3.] Whether the trial court erred in failing to grant appellant's motion for mistrial thereby depriving him of his constitutional right to a fair trial."
 {¶ 9} Appellant's first assignment of error:
 {¶ 10} Hardie argues that the trial court erred in determining that H. was competent to testify when the court did not sufficiently establish that she knew the difference between the truth and a lie, the court expressed concern that H. would not understand the oath, and H. gave conflicting stories at trial. We disagree.
 {¶ 11} Ohio Rule of Evidence 601(A) provides that, "[e]very person is competent to be a witness except * * * those of unsound mind * * * who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."
 {¶ 12} In determining whether an individual who is of unsound mind is competent to testify, the Ohio Supreme Court has stated that, "[a] person who is able to correctly state matters which have come within his perception, with respect to the issues involved, and appreciates and understands the nature and obligation of an oath is a competent witness, notwithstanding some unsoundness of mind." State v. Wildman (1945),145 Ohio St. 379, 386. A trial court has a broad discretion in determining the competency of a witness. Id. Likewise, it is in the best position to observe the witness and judge her ability to relate facts accurately, to understand the difference between the truth and a lie, and to appreciate the responsibility of telling the truth. State v. McNeill, 83 Ohio St.3d 438, 442, 1998-Ohio-293. Therefore, a trial court's determination of competency will not be reversed absent an abuse of discretion. Id. An abuse of discretion amounts to more than a mere error of law or judgment but denotes that the court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 13} In the instant case, the trial court conducted a hearing on H.'s competency to testify at trial. In her interview with the judge in chambers, H. demonstrated that she could accurately recall and report basic facts, such as her name, age, address, and teachers' names. Additionally, H. was able to correctly identify two statements as truthful and two statements as lies. Moreover, H. demonstrated that she knew the importance of telling the truth and that she could be punished for telling a lie, specifically H. stated that if you lie you could go to foster care or jail. (Tr. 9). Additionally, H. stated that she could get someone in trouble if she lied and that would make her sad and upset. (Tr. 9-10).
 {¶ 14} In support of his argument that H. was incompetent to testify, Hardie states that the trial court had concerns about whether H. could understand the oath. However, as the State suggests, the court's concerns appear to be about whether H. could understand the specific terms within the oath. In fact, the court paused several times during the oath to explain its terms better to H. (Tr. 16). In taking the oath, H. promised to tell the truth and that everything she said would be the truth. This does not indicate that H. did not fully comprehend her duty to testify truthfully.
 {¶ 15} Additionally, Hardie points to inconsistencies in H.'s testimony and places in her testimony in which she became confused to assert that she was incompetent to testify. Specifically, Hardie points to questioning by defense counsel regarding events when H. was five years old. In an attempt to ask H. about a prior incident, defense counsel gave her the time frame of when her "mom and daddy got a divorce". However, this time period was problematic because not only had H.'s parents previously been divorced but had remarried and were currently in the process of getting a divorce. Due to the fact that her parents have been married, divorced, remarried, and were divorcing again, it is not surprising that H. was confused by the question. Moreover, H. stated that she could not remember when she was five years old, which explained her continued referral to the instant offense rather than some prior incident.
 {¶ 16} Moreover, when H. discussed the facts underlying the instant offense, she recalled specific details. H. described that the underlying offense did not occur at the picnic but afterward when her mother "was at bingo". (Tr. 25). Additionally, H. stated that the sexual conduct occurred on a school day at her house "when school was over." (Tr. 26). Additionally, H.'s testimony corresponded with her statement to the trial court in the judge's chambers. Having reviewed the testimony, we cannot say that the trial court abused its discretion in finding H. competent to testify.
 {¶ 17} Further, Hardie asserts that even if the trial court correctly found H. to be competent initially, when her trial testimony displayed multiple inconsistencies, the court should have stricken the testimony. In particular, Hardie points to H.'s testimony regarding the details of the sexual encounter. H. initially stated that Hardie touched her "private part" with his finger. (Tr. 59). The prosecutor then asked H. if Hardie had touched her private part with any other part of his body. (Tr. 60). H. didn't understand the question at first and had the question repeated to which she replied, "I don't know". (Id.) When the prosecutor rephrased the question to whether Hardie had ever touched her "private part" with his mouth, H. replied "Yes". (Id.). H. then also stated that Hardie made her touch her finger to his "private part." (Tr. 61). When asked if her clothes were on during the incident, H. initially replied that they were on and then changed her answer to that they were off. (Tr. 60). H. testified that Hardie had had her touch her finger to his private part. (Tr. 61). Additionally, when asked if any other part of her body had ever touched his "private part", H. responded "Yes." (Tr. 62). However, when asked what part of her body, H. stated "No. Never mind." (Id.) But when the court asked her if she understood the question and offered to have the question asked again, H. replied that she understood the question. (Id.) Yet, later she was asked if there was any part of Hardie's body that Hardie had H. put her mouth on and she replied that she had to put her mouth on his mouth and on his "private part". (Tr. 65-66).
 {¶ 18} Although we see the inconsistencies in H.'s testimony about which Hardie complains, we cannot agree that these demonstrate that H. was incompetent to testify. The inconsistencies arise when H. is speaking of the details of the sexual conduct between Hardie and herself and could be due to confusion, poor word choice on the part of the questioners, embarrassment, or her limited understanding of sexuality and sexual terms. Moreover, the jury heard these inconsistencies in H.'s testimony and was free to consider them in gauging her credibility and accepting or rejecting her version of events.Wildman, supra at 387. We cannot say that the trial court abused its discretion in failing to strike H.'s testimony for having inconsistencies. Hardie's first assignment of error is without merit and is overruled.
 {¶ 19} Appellant's second assignment of error:
 {¶ 20} Hardie argues that the trial court erred in permitting rebuttal testimony by the State regarding the relationship between H. and Hardie. We disagree.
 {¶ 21} A trial court has broad discretion in determining whether evidence is admissible as proper rebuttal and its judgment will not be disturbed on appeal absent an abuse of discretion. State v. Jalowiec, 91 Ohio St.3d 220, 2001-Ohio-26;McNeill, supra at 446. Moreover, the State may call as rebuttal witness individuals who have observed a defendant engage in acts that were inconsistent with his assertions. State v. Agner
(1999), 135 Ohio App.3d 286, 293; State v. Banks (1991),71 Ohio App.3d 214, 219-220.
 {¶ 22} At the trial, Hardie's sister, Carole Stone, testified that Hardie was "very loving" and "very patient" with his daughters, often taking them to play and engaging in activities with them. Additionally, Hardie testified that he got along "very lovingly" with H. (Tr. 139). Moreover, Hardie testified that he never had inappropriate sexual contact with H. (Tr. 141-142). Specifically, Hardie denied ever displaying inappropriate affection towards H., including touching her buttocks, breast, or kissing with the tongue. (Tr. 142-144).
 {¶ 23} When the defense rested, the State called three rebuttal witnesses over defense's objection to challenge the above statements by Hardie and his sister. The first rebuttal witness called by the State was Carrie Kihn, H.'s teacher. Kihn testified that on one occasion at school, she observed H. and Hardie engage in a "full embrace", kiss each other "square on the mouth", and tickle each other repeatedly. Kihn also testified that on a separate occasion she observed H. and Hardie engage in a "full embrace", kiss each other on the mouth several times, and tickle each other on the belly while H. sat on Hardie's lap facing him.
 {¶ 24} The second rebuttal witness called was Sue Spangler, who attended the same church as Hardie and his family. (Tr. 158-159). Mrs. Spangler sat behind Hardie and his family in church. (Id.) Mrs. Spangler testified that during the past year she had observed H. licking and blowing in Hardie's ears during church services and that Hardie had done nothing to discourage such behavior. (Tr. 160).
 {¶ 25} The final rebuttal witness was James Spangler, who had also sat behind Hardie and his family at church. Mr. Spangler stated that on several occasions he had observed Hardie's tongue in H.'s ear and vice versa. (Tr. 163-164.) Additionally, he stated that he had observed Hardie rubbing H.'s back, fondling her breasts, and rubbing her groin area over her clothing. (Tr. 164-165). On one occasion, Mr. Spangler observed Hardie with his hands down the back of H.'s pants. (Tr. 165). Mr. Spangler testified that on another occasion he had gotten up during the church service to go to the bathroom and encountered Hardie and H. in a downstairs hallway of the church. (Id.). He testified that "they were kissing. And it was not the way you would kiss a child. It was the way you'd kiss an adult. * * * [H]is arms were around her, both arms. And he was kissing her on the mouth and tongue in mouth." (Tr. 165-166).
 {¶ 26} In reviewing the transcript of the trial, it appears Hardie's testimony describing his relationship with H. as "very loving" and denying he had ever touched H. inappropriately put into issue Hardie's character as a adoring father. Since as part of his defense Hardie had stated that he did not engage in these inappropriate behaviors, the State was entitled to call rebuttal witnesses to state that they had observed Hardie engage in behaviors inconsistent with his assertions. Having reviewed the testimony, we find that the testimony of Kihn and the Spanglers was appropriate rebuttal testimony.
 {¶ 27} Additionally, Hardie asserts that the Kihn and Spangler testimony should not have been allowed because its prejudicial effect outweighed its probative value. Evid. R. 403 prohibits relevant evidence from being admitted if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. However, the trial court gave two cautionary instructions to the jury that the evidence presented by the rebuttal witnesses was not to be considered as proof that Hardie committed the underlying offenses. (Tr. 202, 209). Absent evidence to the contrary, a jury is presumed to have followed the court's instructions. State v. Goff, 82 Ohio St.3d 123, 135,1998-Ohio-369; State v. DePew (1988), 38 Ohio St.3d 275, 284. In the instant case, the jury's verdict supports the presumption that the jury followed the trial court's instructions. In its verdict, although the jury found Hardie guilty of one count of gross sexual imposition, the jury acquitted Hardie of rape and failed to reach a verdict on a second charge of gross sexual imposition. The differing verdicts reached on the different charges indicate that the jury focused on the evidence presented for each of the charged offenses and were not influenced by their knowledge of other instances of improper sexual conduct by Hardie. We do not agree with Hardie that the prejudicial effect of the rebuttal testimony substantially outweighed its probative value. The trial court did not err in admitting the evidence. Hardie's second assignment of error is without merit and is overruled.
 {¶ 28} Appellant's third assignment of error:
 {¶ 29} Hardie argues that the trial court erred in overruling his motion for a mistrial based on the rebuttal testimony. We disagree.
 {¶ 30} The determination of whether to grant or deny a motion for a mistrial lies within the sound discretion of the trial court. State v. Garner, 74 Ohio St.3d 49, 59, 1995-Ohio-168. A trial court should only declare a mistrial when a fair trial can no longer be achieved. Id. at 59.
 {¶ 31} At trial, upon the completion of the State's rebuttal evidence, Hardie's counsel moved for a mistrial, asserting that the State had gone beyond the scope of testimony presented by Hardie. The trial court overruled the motion, finding that Hardie had not only placed his character at issue in the case but had specifically denied engaging in certain conduct with H. As such, the State was entitled to present rebuttal evidence that his character for a loving relationship between himself and H. was not what he presented and that his claims of never engaging in certain inappropriate conduct may not have been true. We find that the evidence supports the trial court's conclusion.
 {¶ 32} As discussed above, Hardie and his sister testified that the relationship between Hardie and H. was "very loving". (Tr. 128, 139). Moreover, Hardie testified that he never had inappropriate sexual contact with H., and that he never rubbed her buttocks, touched her breasts, or licked her ears. (Tr. 141-144) The State's rebuttal evidence contradicted these assertions, stating that others had seen Hardie kissing H. with his tongue, fondling her breasts and groin area, and touching her buttocks. (Tr. 152, 154-155, 160, 163-166). As we stated in the second assignment of error, the State's rebuttal evidence was proper to rebut Hardie's statements during his testimony. Moreover, the probative value of the rebuttal evidence was not outweighed by its prejudicial effect. This is additionally true when the trial court's cautionary instruction to the jury is considered along with the jury's verdict, which demonstrated it was not prejudiced against Hardie by the rebuttal evidence. We do not believe the trial court erred in its conclusion that Hardie was still capable of receiving a fair trial and denying the motion for a mistrial. Hardie's third assignment of error is without merit and is overruled.
 {¶ 33} The judgment of the trial court is affirmed.
Wolff, J. and Grady, J., concur.
[1] On October 16, 2002, when Hardie's wife learned of the sexual allegations made by H. the couple again separated and were seeking a divorce.