JOURNAL ENTRY AND OPINION
Defendant-appellant Dennis Gates appeals his conviction for rape and sexual battery offenses committed against three psychiatric patients while he was employed as a mental health worker. He asserts that the trial court committed plain error by failing to address the competency of the three complaining witnesses and by replacing a juror capable of rendering an impartial verdict. Further, he alleges that the trial court acted in a manner not authorized by law, and without jurisdiction, when it ruled on the sexually violent predator specifications included in the indictment against appellant, and that the conviction is against the manifest weight of the evidence presented at trial. For the reasons below, we affirm the trial court's decision in part and reverse and remand in part.
Gates was employed as a mental health worker in the psychiatric ward of St. Vincent Charity Hospital. From June 6, 1996, through June 11, 1996, Lillian Jackson was a patient in St. Vincent's psychiatric unit after she admitted herself into the hospital due to stress caused by her long-term illness. Jackson testified that she was in a room without a roommate, and that Gates befriended her. Jackson testified to a number of sexual encounters with Gates to which she had not consented. The following events took place during three different encounters: Gates came into Jackson's room and touched her breast and buttocks; he instructed her to leave the public sitting area and return to her room, and then had vaginal sex with her; he entered Jackson's bathroom while she was in it, and instructed her to touch and kiss his penis; he had anal intercourse with her during which she told him to stop, but he refused; and he inserted his fingers into Jackson's vagina.
Jackson testified that Gates is a large man and that she was afraid of him. Gates told her that if she told anybody about the incidents that nobody would believe her because she was on the psychiatric ward. He told her that he knew her personal information, including her address, and that she had children.
Jackson returned to St. Vincent's in July 1996 to have a tumor removed. Patti Bartosik, a nurse with whom Jackson was acquainted during her stay in the psychiatric ward, came to visit her after her surgery. When Bartosik suggested that Jackson return to the psychiatric ward, Jackson became very angry and stated that she would never return there and explained to Bartosik that Gates had asked her to touch and kiss his penis. She did not tell her of the other sexual encounters.
Bartosik testified that she gave this information to Mary Ann Gesing, the head nurse at the psychiatric ward. Afterward, the information was communicated to the staff. Gates approached Bartosik, with a phone message from Jackson, and asked Bartosik why Jackson was calling her.
Jackson testified that after her release from the hospital, Gates contacted her by phone approximately three times and told her not to tell anyone anything. She testified that she had not given him her phone number.
Keith Henderson, a mental health worker, testified that mental health workers have access to a patient's personal information, including home address and phone number, through the admissions process.
Bartosik and Michael Gray, a mental health worker, testified that the mental health workers were responsible for making rounds, by themselves, every fifteen to thirty minutes. Henderson testified that due to inadequate staffing, mental health workers are frequently with patients with no other staff members present.
Allene Saunders was a patient in the psychiatric ward of St. Vincent Charity Hospital from January 7, 1998 through January 21, 1998. Her mother had admitted her into the hospital because Saunders had stopped taking her medication for her bipolar manic-depressive condition.
On one occasion, Gates approached Saunders, told her to go to her room, and then Gates instructed Saunders to perform oral sex on him. On another occasion, Saunders asked another patient for a cigarette. Shortly thereafter, Gates appeared and told Saunders to meet him in the bathroom, where he gave Saunders a cigarette, and then had anal intercourse with her. Saunders testified that she was off of her medication and not using good judgment during these incidents.
In February 1998, Saunders returned to the psychiatric ward. While in the hospital, Jamileh Salti, a patient, told Saunders about a sexual encounter with Gates. Saunders told Salti not to feel bad because the same thing had happened to her.
Henderson testified that Saunders had also told him about her sexual encounters with Gates.
Salti was admitted to St. Vincent's psychiatric ward by her father and sister. She was on several medications for her manic depression.
Salti testified that she is a heavy smoker, and that she asked several employees to get her cigarettes. When she asked Gates for a cigarette, he told her to meet him in the bathroom, where he forced Salti to perform oral sex on him. She started to get sick and pulled away. Gates pulled her pants down and touched his penis to her rectum, but Salti pushed him away prior to penetration. Gates then licked her vagina.
After this incident, Gates brought a cigarette to Salti's room. Salti later flooded her bathroom, and was then secluded in her room. While in seclusion, she wrote on the walls accusing various staff workers of sexual abuse.
Gesing talked to Salti about the graffiti shortly after the incident, and testified that Salti was not in total contact with reality. Henderson testified that he saw the graffiti, but could not recall if the graffiti listed Gates. Mary Fink, a registered nurse on the psychiatric ward, testified that the writing on Salti's wall named all the male staff members, but Gates' name was not on the wall.
Salti gave Gates a Valentine's Day card in which she stated, It could have went further than it did. She sent him a second card with her phone number on it. A third card was sent to Gates, which was not read into evidence. Salti admitted to writing all three cards, and that the cards expressed a desire to have sex with Gates.
Deborah Ludwig, a registered nurse on the psychiatric ward, testified that Salti, as a manic-depressive has a lack of respect for personal boundaries. Fink testified that she was familiar with Salti, and that Salti was hypersexual, and that Fink and Salti's doctor determined that she should only have female staffers take care of her. Gray testified that bipolar patients are extremely impulsive and suggestible, very easily coaxed into doing something that they might not normally do.
Ludwig learned that Salti was getting cigarettes from a staff member, and that the staff member expected something in return for the cigarettes. She noticed that cigarettes began to disappear from the cigarette pack that Salti had brought with her. The pack of cigarettes was in the personal belongings box. Ludwig testified that she believed Gates was the staff member giving the cigarettes to Salti.
Ludwig testified that patients are not allowed to keep property that is considered contraband, and that cigarettes are considered contraband. Such items are placed in a personal belongings box, to which only staff members have access. Henderson said that his position, the same as Gates', requires admitting patients and placing their personal items into the personal belongings box.
Henderson testified that Salti had approached him for cigarettes and that she indicated that she would take care of him if he gave her a cigarette, and that she took care of people who did provide her with cigarettes. Gray also testified that Salti asked him for cigarettes and made sexual suggestions to him. He stated that he immediately recorded this information on her chart to protect himself. He further testified that Salti told him that another worker was interested in her and provided her with cigarettes.
Vanessa Chandler, a housekeeper on the psychiatric floor, testified that Salti approached her, that she asked Salti what was wrong, and that Salti indicated that she had contact with Gates. Chandler told Salti to advise Ludwig of the situation.
Ludwig testified that she and other staff members did not get along with Gates. She said that she found him to be controlling and manipulative. Henderson testified that he kept his distance from Gates because Gates was unpredictable, and he was unsure of what would happen next. Gesing testified that Gates was confrontational. His peers, including staff nurses, mental health workers, and housekeeping personnel, had raised complaints about Gates' behavior.
Charles Hamilton, an emergency room worker, Fink, and Gray testified that Ludwig and Henderson were social friends. They also testified that Ludwig, Henderson, and Chandler all had personality conflicts with Gates.
Hamilton testified that in his twelve years of experience in checking psychiatric patients into the hospital at the emergency room, probably twelve accusations of sexual abuse had been made by patients. He himself had been accused of sexual abuse on one occasion.
Gray testified that it is not unusual for the patients to make charges of sexual abuse.
Detective Essie Howard and Officer Marcia Willis testified as to their activities in investigating the allegations of sexual abuse against Gates brought to their attention by Salti.
The grand jury returned a ten-count indictment. The trial court dismissed counts three, four, nine and ten, which charged sexual battery. Defendant was found guilty of the following charges: rape of Lillian Jackson as charged in counts one and two (R.C. 2907.02); rape of Allene Saunders as charged in count five (R.C. 2907.02), sexual battery of Allene Saunders as charged in count six (R.C. 2907.03), rape of Jamileh Salti as charged in counts seven and eight (R.C. 2907.02).
Gates was sentenced to two concurrent ten-year terms on counts one and two; a term of ten years on count five, running consecutive to the terms imposed on counts one and two; eighteen months on count six, to run consecutive with the term on count five; and two concurrent ten-year terms on counts seven and eight, running consecutive to the other terms.
 I. THE TRIAL COURT'S FAILURE TO ADDRESS THE COMPETENCY OF THE THREE COMPLAINING WITNESSES IN THE CASE AT BAR CONSTITUTES PLAIN ERROR.
Gates claims that because the complaining witnesses were patients in a psychiatric ward at the time of the incidents at issue, the trial court was required to hold competency hearings prior to permitting the complaining witnesses to testify. This argument is without merit.
Evid. R. 601, provides that:
Every person is competent to be a witness except:
 (A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly.
In State v. Wildman (1945), 145 Ohio St. 379, 386, 61 N.E.2d 790, the Ohio Supreme Court held that:
 A person who is able to correctly state matters which have come within his perception, with respect to the issues involved, and appreciates and understands the nature and obligation of an oath is a competent witness, notwithstanding some unsoundness of mind.
The long-standing rule in Ohio is that the trial judge is in the best position to view and hear a witness and to determine the witness's understanding of the events in question and the witness's understanding of the nature of an oath. The court has wide discretion in reaching that determination. See State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraph one of the syllabus; Wildman, 145 Ohio St. 379,61 N.E.2d 790, paragraph three of the syllabus. If [the trial judge] permits a person of unsound mind to testify, his action in so doing is not a ground for reversal at the behest of the aggrieved party, unless there is an abuse of discretion. Wildman at 386.
Further, should the trial judge err on the side of permitting the witness to testify, no harm results, as the jury holds a powerful corrective in their right to pass upon the credibility of the witness. See Id. at 387, citing State v. Scanlan (1874), 58 Mo. 204, 205.
In Wildman, the court stated that the fact that a person is found insane, or is an inmate of an insane asylum, serves as prima facie evidence of unsoundness of mind, and thus places a burden of proving competency upon the party offering the testimony of said person. See Id. 384. Nonetheless, it found that the trial court did not err in permitting two insane women to testify over the defendant's objections. Like the trial court in the instant matter, the trial court in Wildman did not hold a competency hearing prior to the insane women's testimony.
In the instant case, although evidence exists that the witnesses had emotional and psychological problems, no evidence exists that Jackson, Saunders or Salti were ever determined to be legally insane. Further, none of the parties at issue were hospitalized at the time they were called to testify. As such, prima facie evidence of incompetence did not exist. Therefore, because of the presumption of competence, the State had no burden to prove competency prior to the witnesses' testimony.
Here, Gates did not file a motion to have the court hold a pre-trial competency hearing or request a voir dire competency examination. Additionally, Gates failed to raise an objection to the testimony of Jackson, Saunders and Salti. In absence of any objection by defense counsel to the testimony of these witnesses, we must determine whether the court's action of permitting the testimony of Jackson, Saunders or Salti was so obvious and prejudicial as to amount to plain error. See State v. Kinney (1987), 35 Ohio App.3d 84, 86, 519 N.E.2d 1386.
Persons suffering from emotional or psychological illness are not automatically rendered incompetent to testify. See State v. Cotton (1996), 113 Ohio App.3d 125, 128, 680 N.E.2d 657. There is no evidence that Jackson's stressed and depressive state, nor Saunders' or Salti's bipolar disorder rendered them unable to correctly state matters which they perceived. Further, there was no indication that Jackson, Saunders or Salti had difficulty understanding the nature and obligation of an oath.
Gates' contention that the trial court was required to hold a hearing to determine the competency of the complaining witnesses is without merit. In support of his proposition, Gates cites State v. Frazier (1991), 61 Ohio St.3d 247; State v. Said (1994), 71 Ohio St.3d 473; and Kinney. The case at hand is distinguishable from Frazier and Said, as those cases state that competency hearings are required for children under ten years of age. Each of the witnesses in question testified that they are over that age limit.
The only similarity between the case at hand and Kinney is that the witness in Kinney had a tendency to fabricate events to get attention. Here, evidence existed that Salti had accused almost every male staff member of sexual abuse. Presumably, she made these accusations falsely to gain attention. However, that fact alone would not make her incompetent to testify, instead it raises an issue of credibility.
The differences between Kinney and the case at hand outweigh the above similarity. Kinney involved a mentally retarded ten-year-old girl. At the time of the incidents to which she was to testify, she was nine years old, but reached the age of ten by the time of trial. The girl's mental age was about five years old and her I.Q. was lower than 58. A detective testified that when interviewed, the girl confused the incident to which she was testifying with another incident involving the defendant. As such, the court in Kinney found that the trial court committed plain error in permitting her to testify because her competency was clearly called into question prior to the time she was called to the stand.
Gates has failed to show that the competency of Jackson, Saunders or Salti was in question prior to their testimony. Here, all witnesses were well over the age of ten, none were mentally retarded, and all appeared capable of stating facts regarding incidents which they perceived.
Thus, the trial court did not err in permitting the testimony of Jackson, Saunders and Salti. Gates' first assignment of error is without merit.
 II. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT REPLACED A SITTING JUROR WITH AN ALTERNATE JUROR AFTER VOIR DIRE REVEALED THE SITTING JUROR WAS CAPABLE OF RENDERING AN IMPARTIAL VERDICT.
Gates argues that the trial court acted unreasonably, arbitrarily and capriciously in replacing a sitting juror with an alternate juror. This argument is without merit.
Prior to the testimony of defense witness Michael Gray, a juror brought to the court's attention that he was familiar with Gray due to a prior work relationship. In response to this notification, the court questioned the juror outside of the presence of the jury.
The following discussion was had:
 Juror: * * * I believe [Gray] to be a forthright and honest person.
 The Court: So you have already, in your mind, resolved whether he would be truthful or believable?
Juror: I believe he's truthful, yes.
In presence of counsel, and on the record, the court then stated:
 The Court: * * * He's formed an opinion as to [Gray's] believability. * * * [H]e's going to tend to believe what [Gray] says and that's inappropriate.
Crim.R. 24(F) empowers a trial judge, exercising sound discretion, to remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired. See State v. Hopkins (1985),27 Ohio App.3d 196, 197, 500 N.E.2d 323, citing, United States v. Spiegel (C.A. 5, 1979), 604 F.2d 961, 967.
In the case at hand, the juror in question expressly stated that considering his previous working relationship with Gray, he would tend to believe Gray. Based on this statement, the trial court ruled that there was cause to dismiss the juror because he had predetermined that the testimony of Gray was going to be truthful.
Crim. R. 24 in pertinent part provides:
 (B) * * * A person called as a juror may be challenged for the following causes:
* * *
 (9) That he is possessed of a state of mind evincing enmity or bias toward the defendant or the state * * *.
The trial court has discretion to determine when a disabled juror should be replaced by an alternate before deliberations begin. Hopkins,27 Ohio App.3d at 198, 500 N.E.2d 323. Gates has failed to establish that the trial court abused its discretion in dismissing the juror in question. Therefore, this assignment of error fails. See State v. Shields (1984), 15 Ohio App.3d 112, 119.
 III. THE TRIAL COURT ACTED IN A MANNER NOT AUTHORIZED BY LAW, AND WITHOUT JURISDICTION, WHEN IT DETERMINED THE SEXUALLY VIOLENT PREDATOR SPECIFICATIONS INCLUDED IN THE INDICTMENT AGAINST APPELLANT.
In his third assignment of error, appellant argues that the trial court erred in adjudicating him to be a sexual predator. We agree and, accordingly, reverse the adjudication of appellant as a sexual predator.
The trial court committed plain error in failing to comply with R.C.2971.02. Counts five, six, seven, and eight of the indictment contained sexually violent predator specifications pursuant to R.C. 2971.01(I).
R.C. 2971.02 provides:
 In any case in which a sexually violent predator specification is included in the indictment, count in the indictment, or information charging a sexually violent offense and in which the defendant is tried by a jury, the defendant may elect to have the court instead of the jury determine the specification. If the defendant does not elect to have the court determine the specification, the defendant shall be tried before the jury on the charge of the offense, and, following a verdict of guilty on the charge of the offense, the defendant shall be tried before the jury on the sexually violent predator specification. If the defendant elects to have the court determine the specification, the defendant shall be tried on the charge of the offense before the jury, and, following a verdict of guilty on the charge of the offense, the court shall conduct a proceeding at which it shall determine the specification. (Emphasis added.)
In the instant case, Gates did not elect to have the trial court determine the sexually violent predator specification. Consequently, following the verdict of guilty on the rape and sexual battery charges, Gates should have been tried before the jury on the sexually violent predator specifications. The sexually violent predator specification was not tried to the jury; thus, the court failed to comply with R.C. 2971.02.
The trial court erroneously treated the hearing required by R.C. 2971.02
as a sexual predator classification hearing, as provided in R.C. 2950.09
(B).
At the sentencing hearing, the trial court stated:
 Mr. Gates, the law requires that you be afforded a hearing as to the sexual predator specification, which was alleged or set forth in Counts 5, 6, 7 and 8 of the indictment, and I'm prepared to rely on the record of the trial, but will be happy to hear anything else you have to offer counsel, with regard to how Mr. Gates ought to be classified.
In response, Gates' attorney questioned whether the hearing on the sexually violent specifications was even necessary, stating:
 [M]y interpretation of the statute relative to [the sexually violent specifications] was that if there was a finding of the underlying charge, that in fact the Court would be empowered to declare him a sexual predator, to the extent that the Court believes that the person requires a hearing, and I would at least spread out some of the bases upon which the Court would examine the terms of classifying Mr. Gates as a sexual predator.
Gates' attorney then listed reasons why Gates should not be classified as a sexual predator.
Thereafter, the court stated:
 This is a dangerous person, and I think he is the kind of person for whom the sexual predator status was written, and I find by clear and convincing evidence on the record that Mr. Gates is a sexual predator.
In the sentencing addendum subsequently filed by the trial court, the trial court determined that appellant is a sexual predator pursuant to R.C. 2950.09(A). However, the trial court could not classify Gates as a sexual predator under R.C. 2950.09 because it failed to have Gates tried before the jury on the sexually violent predator specifications.
R.C. 2950.09(A), (B) and (C) set forth the methods for classifying a person as a sexual predator. R.C. 2950.09(A) provides that an offender is automatically classified as a sexual predator if the person is convicted of or pleads guilty to a sexually violent offense and also is convicted of or pleads guilty to a sexually violent predator specification that was included in the indictment. Here, Gates was not convicted of the sexually violent predator specification which was included in the indictment. As such, the trial court erred in automatically classifying him a sexual predator pursuant to R.C. 2950.09(A).
Where an offender cannot be classified as a sexual predator pursuant to R.C. 2950.09(A), he or she "may be classified as a sexual predator for purposes of this chapter only in accordance with division (B) or (C) of this section." See Id., see also State v. Jones (July 6, 2000), Cuyahoga App. No. 76222, unreported, discretionary appeal allowed (Dec. 6, 2000),90 Ohio St.3d 1483.
Although the court in its sentencing addendum states that it automatically found Gates to be a sexual predator under R.C. 2950.09(A), presumably, because the trial judge applied a clear and convincing standard at the sentencing hearing, the sexual predator classification was made pursuant to R.C. 2950.09(B). R.C. 2950.09(B) allows an offender to be classified as a sexual predator, after a hearing, if the offender committed "a sexually oriented offense that is a sexually violent offense and a sexually violent predator specification was not included in the indictment * * *." (Emphasis added.)
R.C. 2950.09(B)(4) provides that:
 A hearing shall not be conducted under division (B) of this section regarding an offender if the sexually oriented offense in question is a sexually violent offense and the indictment, count in the indictment, or information charging the offense also included a sexually violent predator specification.
R.C. 2950.09(B) does not apply in this case. Gates committed a sexually violent offense and a sexually violent predator specification was included in the indictment. Thus, Gates' case does not meet the requirements for conducting a sexual predator hearing pursuant to R.C.2950.09(B).
Under Crim.R. 52(B), we have discretion to recognize "plain errors or defects affecting substantial rights * * * although they were not brought to the attention of the court." Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.
Here, we conclude that the trial court committed plain error in adjudicating Gates to be a sexual predator. Accordingly, we sustain Gates' third assignment of error, and reverse the trial court's determination that Gates is a sexual predator under R.C. 2950.09 (A).
 IV. APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.
The standard of review for determining whether the trial court's decision was against the manifest weight of the evidence is set forth in Thompkins, 78 Ohio St.3d 386, citing State v. Martin (1983),20 Ohio App.3d 172-175, 219, 485 N.E.2d 717, 720-721, as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Ample evidence on each element of each count of rape (R.C. 2907.02) against each complaining witness was presented to the jury. Further, evidence on each element of sexual battery of Saunders was also presented. Gates does not dispute that the evidence was presented, but argues that the State failed to meet its burden because the evidence was of such a poor and unreliable quality that whatever the quantity it cannot support a guilty verdict. Gates further asserts that the allegations were made by witnesses who were mentally ill, prone to suggestion, hypersexual, and at least one had made unsubstantiated claims of sexual abuse against other staff members.
As stated above, the mental illness of Jackson, Saunders and Salti did not render them incompetent to testify. Therefore, the argument that the evidence was made by witnesses who were mentally ill and prone to suggestion is without consequence. Further, Salti's hypersexuality and the fact that she had made allegedly unsubstantiated claims of sexual abuse against other staff members at St. Vincent's raises an issue of credibility, not weight of the evidence.
Resolving inconsistencies in the evidence and determining the credibility of the witnesses is primarily up to the fact finder. State v. DeHass (1967), 10 Ohio St.2d 230, 231. See, also, State v. Jenks (1991), 61 Ohio St.3d 259, 279, which provides:
 Where reasonable minds can reach different conclusions upon conflicting evidence, determination as to what occurred is a question for the trier of fact. It is not the function of an appellate court to substitute its judgment for that of the fact finder.
 Rather, upon appellate review, the evidence must be viewed in the light most favorable to the prosecution.
Construing the conflicting evidence in the light most favorable to the prosecution, we find that the verdict was not against the manifest weight of the evidence. Evidence of each element of each offense was presented to the jury. Therefore, Gate's fourth assignment of error is without merit.
Judgment of conviction affirmed. Judgment as to the sexual predator determination is reversed.
It is ordered that appellee and appellant share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, case remanded to the trial court for proceedings consistent with this opinion.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _____________________________ COLLEEN CONWAY COONEY, JUDGE
JAMES J. SWEENEY, P.J. and TERRENCE O'DONNELL, J., CONCUR.