OPINION
Charles Wayne Brooks is appealing the judgment of the Montgomery County Court of Common Pleas convicting him of rape and sentencing him to life imprisonment.
Brooks was indicted by the Montgomery County Grand Jury for one count of rape of a minor under thirteen years of age. A jury trial commenced on June 5, 2000. At trial, it was determined that Brooks had had visitation with his four year old daughter, "the minor," from July 9, 1999 through July 12, 1999. At some point during that weekend, Brooks gave the minor a bath and digitally penetrated her vagina. The minor testified that Brooks had "stuck his finger up [her] bottom" and that she had seen blood in the bathtub.
Upon arriving home, the minor told her mother, Melissa Brooks, what had happened, and Melissa took the minor to the Children's Medical Center. Dr. Barbara Ehler, the pediatric emergency room physician, examined the minor and found two clefts in the minor's hymen. Dr. Ehler testified that the disruption to the hymen probably occurred within twenty-four to thirty-six hours of the examination, and that such disruption was consistent with digital penetration. Based upon this evidence, Brooks was arrested.
At the conclusion of the trial, the jury convicted Brooks of rape by force of a minor under thirteen years old in violation of R.C.2907.02(A)(1)(b). The trial court sentenced Brooks to life imprisonment. Brooks now timely appeals his conviction and sentence, asserting five assignments of error.
 I.
The trial court committed reversible error by not declaring a mistrial for the prejudicial comments spoken by a prospective juror in front of the jury venire.
In his first assignment of error, Brooks argues that the following exchange during voir dire was highly prejudicial and that the trial court should have sua sponte declared a mistrial:
 MR. HOWARD: My first cousin was murdered, and Mr. Lennen was the defense attorney.
THE COURT: Okay. You're Ralph Howard?
MR. HOWARD: Ralph Howard.
 THE COURT: Okay. Is it something you want to talk about in court or would you prefer to go in chambers?
MR. HOWARD: I'm prejudiced against Mr. Lennen.
 THE COURT: You're prejudiced against Mr. Lennen. Okay. I have no problem excusing Mr. Howard for cause.
MS. FRYDMAN: No objection.
MR. LENNEN: No objection, Your Honor.
THE COURT: Okay. Thank you, sir.
(Tr. 229-230.) Despite his failure to object, Brooks argues that the trial court should have declared a mistrial based upon this exchange in front of other jurors, because Howard's statements were "highly prejudicial and unfair" and tainted the minds of the jurors who were present. Furthermore, Brooks contends that the trial court "abused its discretion" by failing to examine the members of the venire who were present during this exchange to see if they could remain objective and impartial.
This situation is similar to that in State v. Sanders (2001),92 Ohio St.3d 245, where a venireman was excused for cause based upon statements he had made in the presence of other members of the venire that Sanders had reminded him of Louis Farrakhan Sanders failed to request a voir dire of the other members of the venire regarding possible biases resulting from hearing this statement. The Court declined to presume that other members of the venire had been biased as a result of the statement, and instead held that "the venireman expressed only personal opinions, did not speak at length, and was immediately excused for cause." Id. at 248. (Citations omitted.)
We find this situation similar to that in Sanders. The venireman in this instance expressed a personal opinion about Brooks' attorney. The statement was brief, the member was immediately excused for cause, and Brooks failed to request a voir dire of the remaining members of the venire. Furthermore, Brooks offers no evidence that any members of the venire were biased as a result of hearing the statements, and we will not presume such bias.
Accordingly, we overrule Brooks' first assignment of error.
 II.
The trial court committed reversible error by declaring the minor child competent to testify against the appellant.
Brooks argues that the minor was incompetent to testify, and that the trial court conducted an insufficient voir dire of the minor prior to determining her competency.
A trial judge has broad discretion in determining the competency of a witness to testify at trial since the judge is in the best position to observe the witness and to determine the witness' understanding of the truth. State v. Clark (1994), 71 Ohio St.3d 466; State v. Frazier (1991), 61 Ohio St.3d 247, 251; State v. Wildman (1945), 145 Ohio St. 379, 31 O.O.5. A trial court's finding of competency will only be disturbed if it abused its discretion. Clark, supra; Wildman, supra. An abuse of discretion is more than an error of law but instead amounts to an attitude that is unreasonable, arbitrary, or unconscionable. Clark, supra.
Evid.R. 601(A) provides that "[e]very person is competent to be a witness except * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." A trial judge is required to conduct a voir dire examination of a child under ten years of age to determine if the child is competent to testify. Frazier, supra. The Ohio Supreme Court set out the following test to determine a child's competency:
 In determining whether a child under ten is competent to testify, the trial court must take into consideration
 (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify,
 (2) the child's ability to recollect those impressions or observations,
 (3) the child's ability to communicate what was observed,
 (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful.
Id. at syllabus. However, a general inquiry is sufficient for a trial court to determine if a child can perceive, recollect, and truthfully relate events. State v. McNeill (1998), 83 Ohio St.3d 438; State v. Kelly (1994), 93 Ohio App.3d 257. This Court found in State v. Owens (Feb. 25, 2000), Montgomery App. No. 17394, unreported, that two young children were competent to testify when the judge elicited examples from the children demonstrating that they knew the difference between the truth and a lie. Based on the children's statements that if they lied they would get in trouble, this court concluded that the children understood truth and falsity and the responsibility to be truthful. Id. Additionally, a child may be competent to testify even though the child is unable to recollect some facts or initially does not recognize the concept of truth, so long as the voir dire continues on to demonstrate that the child can perceive and recall generally and understands the concept of truthfulness. State v. Boyd (Oct. 31, 1997), Champaign App. No. 97 CA 1, unreported, (finding children who were six, seven, and nine years old competent to testify). Moreover, provided that a child is definite about other questions, some measure of ambiguity is insufficient to render a child incompetent as a matter of law. State v. Steed (Aug. 13, 1984), Greene App. No. 83-CA-73, unreported.
In the instant case, the trial court conducted a voir dire during which the minor was able to observe and recall events correctly and understand the obligation to tell the truth. The trial court tested the minor's ability to perceive, recollect, and communicate facts, and the minor was able to state her teachers' names, count to thirty, say her A, B, C's, and tell the trial court about her favorite toys. The minor even corrected the trial court judge when she mispronounced her teacher's name. (Tr. 278)
Brooks contends, however, that the minor could not perceive and recollect facts and should not have been deemed competent. Brooks' argument focuses upon the minor's inability to state the sequence of months and the time frames of the holidays, and her inability to recall the name of her school or her teacher. We disagree. The fact that a child cannot remember certain generalities does not deem the child incompetent to testify. See Boyd, supra, and Steed, supra. The key issue is whether the minor was able to receive accurate impressions of fact and could truthfully relate those impressions in court. Frazier, supra. That she may not have remembered certain generalities does not relate to her competency to testify, but relates to her credibility as a witness.
Additionally, Brooks asserts that the minor was incompetent because she was unable to discern the difference between a truth and a lie. Although the minor was not able to define what the words "truth" and "lie" meant, she was able to understand the judge's examples of truths and lies, and she understood that she needed to be truthful. Furthermore, the minor demonstrated that she could not be persuaded to change her answer from a truth to a lie, and at one point she stated that it was "not good to tell a lie." (Tr. 284)
Accordingly, we find that the trial court did not abuse its discretion in determining that the minor was competent, as she demonstrated during voir dire that she could perceive, recall generally and understand the concept of truthfulness and would not be dissuaded from telling the truth.
Finally, Brooks finds error in the trial court's failure to ask the minor about the rape during the competency evaluation. In State v. Mayhew (1991), 71 Ohio App.3d 622, 629, the court stated that "[o]nce the court determines that a person can properly recount events from the past and knows that she should tell the truth in court, she is competent." Although it would have been helpful if the trial judge would have questioned the minor regarding the rape and the circumstances surrounding the rape, it was not necessary in the trial court's competency determination. The competency hearing reveals that the trial court did not abuse its discretion, as each of the Frazier factors was addressed in the present case. Additionally, it appears from the transcript that the minor was able to accurately recall impressions of fact and relate them truthfully.
Accordingly, Brooks' second assignment of error is overruled.
 III.
The trial court committed reversible error by allowing the attending physician to testify as to hearsay statements of the minor child.
Brooks argues that it was error for the trial court to allow the following portion of Dr. Ehler's testimony:
 Q. * * * Did you obtain from the social worker in this case information about the chief complaint that the child was coming to the hospital for?
 A. Yes. Before I went to the room, I was talking to the social worker, and she gave me the report of what she was talking to the mother and patient.
 Q. Did she tell you what — did the patient, did the child, [the minor], actually in her own words tell the social worker what she was complaining of or what had happened to her?
A. That was my understanding.
 Q. And what did the social worker tell you [the minor] said had happened?
 A. The social worker approached me, and she was a little bit upset, and she said that the child stated that she was with the father on the weekend and that the father was naked and put his finger in her pee-pee, which was hurting, and that she was bleeding afterward.
 Q. Now, the terminology pee-pee, was that the terminology that was reported to you that the child used?
 A. I really don't remember because pee-pee is something I use for girls as a description of the genital area, private area.
* * *
 Q. All right. Now, did you speak to [the minor] independently of the social worker? In other words, did you ask [the minor] yourself to have her tell you what had happened or what she said her father had done?
A. No.
Q. And is there a reason why —
A. Yes.
Q. — you did not do that?
 A. Yes. I have seen many children who were possibly abused, and for many of them it is very painful and frightening experience, and the more they have to repeat that, it's just cruel to do. And I did have the history from the social worker. The nurses told me the same, and I don't know if it was by speaking to the child or through the social worker. Then I was talking to the mother, and I believe I had enough of history to perform the physical examination and put those two things together.
 Q. Is it your testimony that the child reported, that [the minor] actually reported to the social worker that her daddy stuck his finger in her and made it bleed?
A. Yes.
(Tr. 353-355.)
Brooks argues that the statements at issue were hearsay and do not fall under Evid.R. 803(4), which governs the admissibility of hearsay declarations made for the purpose of securing medical treatment or diagnosis. We note that Brooks did not object to the prosecutor's questioning at trial; therefore, Brooks has waived all but plain error. State v. Ballew (1996), 76 Ohio St.3d 244, 254.
This situation is similar to that in State v. Burgess (Nov. 8, 1996), Montgomery App. No. 15548, unreported, where we found that the statements made by a treating physician as to what the victim had said did fall within the exception under Evid.R. 803(4). In Burgess, we noted:
 We are unwilling to approve a rule which allows a person accused of abusing a young child (when there is no physical evidence of that abuse) to keep the child's statements to a doctor out of evidence simply because of a lack of initial motivation to seek treatment. In many situations, the statements of young children are sufficiently trustworthy and can appropriately be admitted pursuant to Evid.R. 803(4).
Id., quoting State v. Dever (1992), 64 Ohio St.3d 401, 410. We recognized that statements made to physicians by young children may be admissible to identify a perpetrator of child sexual abuse under Evid.R. 803(4), if the statements were made for the purpose of diagnosis or treatment. Id. We concluded that because there had been testimony that the child had been seeking a medical diagnosis, the trial court had not abused its discretion by allowing the statement over the objection of counsel. Id.
The statements in this case were made by the minor to the social worker, and the social worker relayed the information to Dr. Ehler in order for her to diagnose and treat the minor after the rape. Accordingly, the statements were properly admitted under 10 Evid.R. 803(4). Furthermore, the minor testified at trial and Brooks had the opportunity to, and in fact did, cross-examine the minor about the statements and the allegations. As such, we cannot conclude that but for the statement, Brooks would not have been convicted. Instead, we find that any error in admitting the hearsay statement was harmless.
Brooks' third assignment of error is overruled.
 IV.
The trial court committed reversible error by limiting the cross and direct examinations by Appellant's counsel in violation of the Confrontation Clause of the Sixth Amendment.
The admission or exclusion of evidence is a matter resting within the trial court's sound discretion. State v. Combs (1991), 62 Ohio St.3d 278; State v. Lowe (1994), 69 Ohio St.3d 527. Evid.R. 611(B) provides that cross-examination shall be permitted on all relevant matters and matters affecting credibility. "The limitation of * * * cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. Such exercise of discretion will not be disturbed in the absence of a clear showing of an abuse of discretion." State v. Acre (1983), 6 Ohio St.3d 140, 145. Trial courts may impose reasonable limits on cross-examination based on various concerns, such as harassment, prejudice, confusion of the issues, repetitive testimony, or marginally relevant interrogation. See Delaware v. Van Arsdall (1986),475 U.S. 673, 679.
In this assignment of error, Brooks asserts that the trial court improperly restricted relevant testimony. Brooks first contends that the trial court erred by limiting the cross-examination of Dr. Ehler regarding her knowledge of whether the minor had previously been treated for a urinary tract infection. However, there is no evidence that the minor in this case had ever suffered from a urinary tract infection, nor did Brooks proffer such information at trial. Additionally, it is unclear how a catheter inserted into the urethra would affect the hymen located in the vaginal area, and again, Brooks proffered no information to the contrary. In fact, Brooks has offered us no evidence that he was prejudiced by the trial court's ruling. Moreover, Dr. Ehler explained that the cleft in the hymen was consistent with digital penetration. As such, we cannot see the relevance of this line of questioning, and we find that the trial court did not abuse its discretion.
Brooks' second allegation is that the trial court improperly limited the scope of his cross-examination of Det. Jeffrey E. Trego, of Officer B.S. Krimmer, and of Johnny Curtis Mellon, regarding the Riverside Police Department's cessation of the investigation of further suspects. Brooks proffered that the police department was biased against him because Melissa, the minor's mother, was related to a member of the police department and she had dated an officer in the police department.
We do not find that the trial court abused its discretion by precluding such testimony. During his voir dire, Officer Krimmer stated that he and Melissa had begun dating several weeks after the investigation commenced, and to the best of his knowledge, she did not have any relatives in the police department. Furthermore, at the time of the investigation, all evidence of the rape pointed to Brooks as the perpetrator, and Brooks has offered no other alternative suspect. Additionally, Brooks provided us with no evidence that he was prejudiced by the trial court's actions. The inclusion of these testimonies would have clouded the issues in this case.
Based upon the above discussion, we find that the trial court did not abuse its discretion in precluding the testimonies at issue.
Brooks' fourth assignment of error is overruled.
 V.
The trial court committed reversible error by admitting prior bad acts of the appellant.
In his final assignment of error, Brooks asserts that the trial court erred by allowing the State to ask about his completion of a batterer's program. Brooks alternatively contends that if such was proper, he should have been able to testify that the domestic violence was the result of Melissa's false accusations. We disagree.
Brooks testified on direct and cross examination that he had been a loving and gentle husband and father. Brooks described his sorrow and stress as Melissa had suffered several miscarriages, and he described how he had found a specialist to help Melissa carry a baby to term. He also shared with the jury how he cared for Melissa when she had had to have brain surgery. Additionally, Brooks spoke about the "fun" times he had spent with the minor, and he brought along a picture of him and the minor at Kings' Island to demonstrate that he was a "good father" and that he loved his children. The testimony upon cross-examination that is at issue is as follows:
 Q. Now, we've heard so much about you, the perfect father and husband, did we not? You were domestic, you did dishes, you did laundry, you did your part bathing the children; is that correct?
A. Yes, ma'am, I did.
 Q. You didn't feel that that needed to be all on your wife, did you?
A. No, I didn't.
Q. All right.
A. My wife was unable to do those things.
Q. And you took care of her when she was sick, of Missy?
A. Yes, ma'am.
 Q. You didn't even want the nurses to bathe her, you had to bathe her, right?
 A. Because she was almost dropped on her head right after her brain surgery.
 Q. And I'm asking you, was that the person you're trying to depict, the man who was kind to her and gentle with her?
A. I was that way with all of my family, yes.
 Q. You were that way with your wife and you were that way with your children, is that what you want them to believe?
A. That is exactly what I want them to believe.
 Q. Now, I'd like you to tell them about the other side of Wayne Brooks.
A. What other side?
Q. Tell them the whole story.
A. I don't understand your question, ma'am.
 Q. Tell them about the side of Wayne Brooks that was not nice to Missy Brooks.
A. There wasn't a side.
Q. Never?
A. No, there wasn't.
 Q. What about the batterers sic} program you went through for domestic violence on her?
(Tr. 471-472)
Contrary to Brooks' assertions, the testimony elicited by the State on cross-examination directly impeached Brooks' credibility, as it rebutted Brooks' assertions that he was a kind, gentle and loving husband. It is well-established that Evid.R. 611(B) permits cross-examination on all relevant matters and matters affecting credibility. We find that the State offered the information for the purpose of impeaching Brooks' statements that he was "kind and gentle" to Melissa, and not for the purpose of showing that he had committed domestic violence upon Melissa, or that he had acted in conformity with such conduct by raping the minor. The State was entitled to impeach Brooks' credibility by inquiring into specific instances of Brooks' own conduct, as the matters involved were probative of Brooks' credibility.
Brooks further argues that the trial court improperly restricted the scope of Brooks' redirect examination relating to allegedly false accusations of domestic violence by Melissa. Generally, redirect examination is limited to issues explored by the opposing party on cross-examination. State v. Zimmerman (Sept. 1, 2000), Lucas App. Nos. L-98-1246, CR-019970354, unreported, citing Holtz v. Dick (1884),42 Ohio St. 23, paragraph seven of the syllabus; Micham v. Micham (Sept. 30, 1998), Lucas App. No. L-97-1308, unreported. "However, the ultimate limits of inquiry on redirect examination are left to the sound discretion of the trial court." Zimmerman, supra. This discretion is abused if the trial court's actions are "grossly violative of fact and logic so as to demonstrate perversity of will, defiance of judgment, undue passion, or extreme bias." Micham, supra, quoting Deans v. Allegheny Int'l. (USA) Inc. (1990), 69 Ohio App.3d 349, 352.
The redirect testimony which Brooks' attorney was seeking was outside the scope of the testimony elicited on cross-examination, and it was not an abuse of discretion for the trial court to restrict it. Again, the testimony on cross-examination was elicited to impeach Brooks' credibility based upon his statements that he had been a kind, gentle and loving husband and father. The testimony on redirect would have gone to the truth of the matter of the domestic violence charge and was not relevant to the rape trial for purposes other than impeachment. We do not find that the trial court's action was violative of fact or logic, and thus it did not abuse its discretion.
Accordingly, having determined that the trial court did not abuse its discretion by allowing the testimony upon cross-examination and in precluding the unrelated testimony during redirect examination, this assignment of error is not well-taken.
Brooks' fifth assignment of error is overruled.
The judgment of the trial court is affirmed.
BROGAN, J. and GLASSER,* J., concur.
* Hon. George M. Glasser sitting by assignment of the Chief Justice of the Supreme Court of Ohio.