[Cite as *Prado v. Elsayed*, 2012-Ohio-290.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

GLENDA PRADO (nka DALLMAN)    :

    Plaintiff-Appellant    :      C.A. CASE NO.   24528

v.    :      T.C. NO.   07DV1402

EZZAT ELSAYED    :      (Civil appeal from Common
           Pleas Court, Domestic Relations)

    Defendant-Appellee    :

    :

. . . . . . . . . .

**O P I N I O N**

Rendered on the   27th   day of    January   , 2012.

. . . . . . . . . .

GEORGE A. KATCHMER, Atty. Reg. No. 0005031, 108 Dayton Street, Yellow Springs, Ohio 45387
    Attorney for Plaintiff-Appellant

EZZAT ELSAYED, 8460 Towson Blvd.,Miamisburg, Ohio 45342
    Defendant-Appellee

. . . . . . . . . .

DONOVAN, J.

{¶ 1} Plaintiff-appellant Glenda Prado (nka Dallman) appeals a decision of the Montgomery County Court of Common Pleas, Domestic Relations Division, overruling her petition for a domestic violence civil protection order (hereinafter the "CPO") filed on behalf

of her minor daughter, H.E.

{¶ 2} The record establishes that Prado filed a petition for the CPO on December 10, 2007, in which she alleged that H.E. had suffered physical and mental abuse at the hands of defendant-appellee Ezzat Elsayed, the minor child's biological father. An evidentiary hearing was held over the course of the following ten days: August 26, 2009; August 27, 2009; September 10, 2009; September 24, 2009; November 10, 2009; December 2, 2009; February 11, 2010; March 19, 2010; May 20, 2010; and June 18, 2010. The trial court issued a written decision denying the CPO on October 12, 2010. On February 28, 2011, the trial court issued a final appealable order. Prado filed a timely notice of appeal with this Court on March 10, 2011.

I

{¶ 3} The record establishes that Glenda and Ezzat originally met in November of 2000 in New York, New York. As Glenda and Ezzat were both Muslim at the time, the parties were married in a small Islamic ceremony in February of 2001. No documentation was filed memorializing the marriage. Accordingly, the marriage was not recognized by the state of New York. One week after the parties were "married," Ezzat "divorced" Glenda in the Islamic tradition by merely declaring that they were, in fact, divorced. In March of 2001, the parties "remarried" in the Islamic tradition. As before, the parties did not seek a marriage license from the state of New York, nor was any paperwork filed in order to validate their union.

{¶ 4} On April 18, 2001, Glenda alleged that Ezzat assaulted her. Ezzat was arrested and placed in jail pending trial on the assault charges. In the meantime, Glenda

was diagnosed with stomach tumors and other medical issues. The parties resumed their relationship in July of 2001, and the criminal charges against Ezzat were dismissed.

{¶ 5} On September 5, 2001, the parties were married again in a ceremony at the Egyptian Embassy in New York. The married couple moved to Dayton, Ohio, five days later on September 10, 2001. Ezzat testified that he divorced Glenda in the Islamic tradition a second time on December 2, 2001. Glenda denies that the parties divorced on this date, and no records exist which establish that the parties did, in fact, divorce.

{¶ 6} On January 8, 2002, Ezzat married a second woman, Patricia Gregory, who gave birth to two children during the course of their marriage. Ezzat testified that he did not believe that he was the father of either of Patricia's children. While he was married to Patricia, Ezzat resumed his relationship with Glenda, and on October 17, 2003, H.E. was born to the parties. In November of 2004, Ezzat was granted a divorce from Patricia by the Montgomery County Domestic Relations Court.

{¶ 7} On November 27, 2004, Glenda petitioned for a Civil Protection Order (CPO) against Ezzat. Two days later, Ezzat filed for a CPO against Glenda. On December 9, 2004, Ezzat filed a divorce complaint in Montgomery County against Glenda. Ezzat also filed for an "Egyptian divorce" on May 19, 2005, while the divorce complaint in Montgomery County was still pending. Ezzat voluntarily dismissed the Montgomery County divorce complaint on May 1, 2006. The "Egyptian divorce," however, was subsequently granted on August 20, 2008.

{¶ 8} After numerous hearings, the trial court denied Ezzat's petition for a CPO and granted Glenda's petition for CPO. On May 11, 2006, the trial court designated Glenda as

the residential parent and primary custodian of H.E. Ezzat was granted alternating weekend visitations with H.E. and ordered to pay child support.

{¶ 9} On December 10, 2007, Glenda petitioned for a domestic violence CPO against Ezzat on behalf of H.E. in which she sought an order prohibiting any contact between Ezzat and H.E. The petition was filed in Montgomery County. The trial court issued a temporary order suspending Ezzat's visitation with H.E. pending a CPO hearing originally scheduled for December 17, 2007.

{¶ 10} Ultimately, the case was transferred to Clark County to be heard in conjunction with the parties' divorce proceedings. The trial court in Clark County appointed a Guardian Ad Litem (GAL) to represent H.E. The trial court also ordered that Glenda and Ezzat submit to separate psychological testing conducted by Dr. Gordon Harris, a court-appointed psychologist. While the CPO was pending, Ezzat was permitted to attend supervised visitations with H.E. at the Gibault Center in Springfield, Ohio. As previously noted, the trial court conducted several hearings from late August of 2009, through June of 2010. The parties were represented by counsel at the hearings, and both Ezzat and Glenda testified. On October 12, 2010, the trial court denied Glenda's petition on behalf of H.E. for a domestic violence CPO against Ezzat.

{¶ 11} It is from this judgment that Glenda now appeals.

II

{¶ 12} Prado's first assignment of error is as follows:

{¶ 13} "THE TRIAL COURT ERRED IN FINDING THAT THE APPELLANT DID NOT PROVE HER CASE BY A PREPONDERANCE OF THE EVIDENCE."

{¶ 14} In her first assignment of error, Glenda contends that the trial court abused its discretion when it found that she did not prove by a preponderance of the evidence that Ezzat abused H.E., such that a CPO was in the minor child's best interests.

{¶ 15} The statute that authorizes a court to grant a domestic relations protection order is R.C. 3113.31. One of the statute's requirements is that a petitioner state "[a]n allegation that the respondent engaged in domestic violence against a family or household member of the respondent, including a description of the nature and extent of the domestic violence." R.C. 3113.31(C)(1). See *Beach v. Beach* (Oct. 27, 1992), Franklin App. No. 92AP-321, at *1 ("[T]he evidence used as a basis for issuance of such an order must meet the minimum requirements of the statute defining domestic violence."). "The statutory criterion to determine whether or not to grant a civil protection order pursuant to R.C. 3113.31 is the existence or threatened existence of domestic violence." *Thomas v. Thomas* (1988), 44 Ohio App.3d 6, 8. The petitioner must establish this by a preponderance of the evidence. *Felton v. Felton* (1997), 79 Ohio St.3d 34, syllabus ¶2.

{¶ 16} "Domestic violence" here means one or more of these acts:

{¶ 17} "(a) Attempting to cause or recklessly causing bodily injury;

{¶ 18} "(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;

{¶ 19} "(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

{¶ 20} "(d) Committing a sexually oriented offense." R.C. 3113.31(A)(1).

{¶ 21} The allegations in Glenda's petition comfortably fall under subsections (a) and (c).

{¶ 22} The basis for the CPO filed by Glenda on behalf of H.E. on December 10, 2007, was an incident which allegedly occurred at Ezzat's residence during one of his weekend visitations with the minor child. Specifically, Glenda testified that there was a "large, bloody cut running from [H.E.]'s abdomen down to her leg and knee, as well as a substantial amount of bruising." Upon discovery of the injury, Glenda testified that she took H.E. to the Miamisburg Police Department to have the minor child examined. However, no criminal charges were filed as a result of the complaint.

{¶ 23} Testimony was adduced at the hearings that H.E. informed Kimberley Speaks, a Clark County Children's Services investigator, that Ezzat cut her with a sword. H.E. also provided the same explanation to Karen Bays, a child counselor at the Gibault Center. Ezzat denied that he injured H.E. Dr. Harris' custody evaluation indicates that according to Ezzat, H.E. said "the cat did it." The trial court conducted a voir dire of H.E. in order to determine her competency regarding her testimony that Ezzat cut her with a "chicken knife" in retaliation for "talking about her family." However, the trial court found that H.E. was incompetent to testify and gave no weight to her testimony. Additionally, the trial court gave very little weight to the testimony of Ezzat and Glenda.

{¶ 24} Dr. Harris, the court-appointed psychologist testified as follows:

{¶ 25} "Q: Now, you asked [H.E.] about this incident that took place with the scratches on, allegedly, that Glenda had told you about the scratches on her leg and the reason behind the protection order, didn't you?

**{¶ 26}** "A: Yes.

**{¶ 27}** "Q: And what was [H.E.]'s response?

**{¶ 28}** "A: He, you know, I guess I asked if he had cut her. *And initially she said with his nails, then she added that he cut her with a knife. And Glenda had said that she, [H.E.] reported it was a sword.* So I asked her [H.E.] if Ezzat had a sword, and she said yes, he cuts chicken with it. And I asked her if he had cut her with it, and she said yes. *And when I asked her where on her body he had cut her, first she said she didn't remember, then she said it was her arm. Then she changed and said it was her leg, and qualified by saying it hurt a little but not much.* And when I asked her if it caused her to bleed, she first said no, and then said maybe, and then said yes.

**{¶ 29}** "Q: What does that indicate to you, or what did that indicate to you?

**{¶ 30}** "A: I think that was her attempt to come up with what was the right response, you know. If a child has been hurt and cut and bleeds, they remember where it was. They remember if they bled, you know, to not remember or to change that –

**{¶ 31}** "Q: Anything in your conclusions through both reports indicate to you that Ezzat would hurt this child?

**{¶ 32}** "A: Nothing. If anything, I see him being overindulgent rather than being hurtful."

**{¶ 33}** Dr. Harris also testified that he found Glenda to be the type of person who "would say what she wants to get what she wants and absolves herself and blames other people for whatever is not right in her life." Dr. Harris concluded that throughout the case, Glenda had, in fact, been working to alienate H.E. from Ezzat. The record also contains

photographs of the location on H.E.'s leg where she was allegedly injured by Ezzat. The scratch depicted in the photographs does not support a finding that H.E. was cut with a sword or a knife.

{¶ 34} Upon review, we conclude that the trial court did not abuse its discretion when it found that Glenda failed to establish by a preponderance of the evidence that Ezzat abused H.E. or that she was in danger of being injured by Ezzat in the future. Accordingly, the trial court did not err when it denied Glenda's petition for a CPO on H.E.'s behalf.

{¶ 35} Glenda's first assignment of error is overruled.

III

{¶ 36} Prado's second and final assignment of error is as follows:

{¶ 37} "THE COURT ERRED IN FINDING THE CHILD, [H.E.], INCOMPETENT TO TESTIFY."

{¶ 38} In her second and final assignment, Glenda argues that the trial court erred when it found that H.E. was incompetent to testify and gave no weight to her testimony.

{¶ 39} A trial judge has broad discretion in determining the competency of a witness to testify at trial since the judge is in the best position to observe the witness and to determine the witness' understanding of the truth. *State v. Clark* (1994), 71 Ohio St.3d 466; *State v. Frazier* (1991), 61 Ohio St.3d 247, 251; *State v. Wildman* (1945), 145 Ohio St. 379. A trial court's finding of competency will only be disturbed if it abused its discretion. *Clark*, 71 Ohio St.3d 466. An abuse of discretion is more than an error of law, but instead amounts to an attitude that is unreasonable, arbitrary, or unconscionable. Id.

{¶ 40} Evid.R. 601(A) provides that "[e]very person is competent to be a witness

except *** children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." A trial judge is required to conduct a voir dire examination of a child under ten years of age to determine if the child is competent to testify. *Frazier*, 61 Ohio St.3d 247. The Ohio Supreme Court set out the following test to determine a child's competency:

{¶ 41} "In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." Id. at syllabus.

{¶ 42} However, a general inquiry is sufficient for a trial court to determine if a child can perceive, recollect, and truthfully relate events. *State v. McNeill* (1998), 83 Ohio St.3d 438; *State v. Kelly* (1994), 93 Ohio App.3d 257. This Court found in *State v. Owens* (Feb. 25, 2000), Montgomery App. No. 17394, that two young children were competent to testify when the judge elicited examples from the children demonstrating that they knew the difference between the truth and a lie. Based on the children's statements that if they lied they would get in trouble, this court concluded that the children understood truth and falsity and the responsibility to be truthful. Id. Additionally, a child may be competent to testify even though the child is unable to recollect some facts or initially does not recognize the concept of truth, so long as the voir dire continues on to demonstrate that the child can perceive and recall generally and understands the concept of truthfulness. *State v. Boyd*

(Oct. 31, 1997), Champaign App. No. 97 CA 1, (finding children who were six, seven, and nine years old competent to testify). Moreover, provided that a child is definite about other questions, some measure of ambiguity is insufficient to render a child incompetent as a matter of law. *State v. Steed* (Aug. 13, 1984), Greene App. No. 83-CA-73.

**{¶ 43}** In the instant case, H.E. was thoroughly voir dired by the trial court, as well as both parties' attorneys. In its decision denying Glenda's petition for a CPO, the trial court found that H.E. "was *** incapable of receiving just impressions of the facts and transactions relating to to the issues for which she was examined and also incapable of relating those facts truly." Initially, we note that the comprehensive voir dire conducted by the trial court established that H.E. was unaware how old she was when the alleged abuse occurred. Clearly, H.E.'s perception of time was somewhat distorted, thus rendering suspect her recollection of the cause of the injuries. As noted previously, H.E. demonstrated difficulty in remembering where Ezzat allegedly cut her. Initially, H.E. told Dr. Harris that she did not remember where Ezzat cut her. H.E. then informed Dr. Harris that Ezzat cut her arm. Finally, H.E. told Dr. Harris that Ezzat had cut her on the leg. H.E.'s responses to Dr. Harris' questions cast doubt on her ability to correctly perceive events happening around her.

**{¶ 44}** At the time when the alleged abuse occurred, H.E. was just four years old. H.E. was six years old when she was voir dired by the trial court.

**{¶ 45}** "The Court: *** Do you remember when Ezzat cut you with the knife, do you know how old you were at the time?

**{¶ 46}** "H.E.: I think I was one or two. No, I don't remember.

{¶ 47} "Q: Okay. Maybe one or two.

{¶ 48} "A: Or maybe three or four, I don't remember.

{¶ 49} "Q: Somewhere between one and four; we're getting it narrowed down.

{¶ 50} "A: Um-hum."

{¶ 51} ***

{¶ 52} "Q: Does time kind of run together for you? In other words, is it hard for you to remember the difference in what you were doing a week ago and what you were doing a month ago?

{¶ 53} "A: Yeah.

{¶ 54} "Q: How many months are in a year?

{¶ 55} "A: I don't know.

{¶ 56} ***

{¶ 57} "Q: Do you know how many days are in a week?

{¶ 58} "A: No."

{¶ 59} Additionally, during her voir dire, H.E. demonstrated a tendency to merely repeat comments or questions directed to her by authority figures, rather than providing original responses. This established that H.E. was open to suggestion and may have been improperly influenced by Glenda to answer questions regarding the alleged abuse in a certain manner.

{¶ 60} "The Court: If I stepped on your foot, if I step on your foot accidentally, and I'm a fat guy, so it would probably hurt, would you expect me to apologize to you and say I'm sorry, I didn't mean to step on your foot?

{¶ 61} "H.E.: I —

{¶ 62} "Q: You're not sure?

{¶ 63} "A: No.

{¶ 64} "Q: *Have you ever apologized to anybody for anything?*

{¶ 65} "A: *Yeah.*

{¶ 66} "Q: *Who?*

{¶ 67} "A: Cameron, who is in my school.

{¶ 68} "Q: *Why did you apologize?*

{¶ 69} "A: *Because sometimes I step on her foot, and I say sorry. She accepts my apology.*"

{¶ 70} Lastly, we note that, while not dispositive, H.E. stated that she did not know what her current address was. In light of the foregoing, the trial court did not abuse its discretion when it found her to be incompetent to testify.

{¶ 71} Glenda's second assignment of error is overruled.

IV

{¶ 72} Both of Glenda's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies mailed to:

George A. Katchmer
Ezzat Elsayed
Hon. Thomas J. Capper
Hon. Timothy D. Wood